TWIN VILLAGE WATER COMPANY, In Equity,

*vs.*

DAMARISCOTTA GAS LIGHT COMPANY.

Lincoln.   Opinion December 17, 1903.

*Corporations*, Gas & Electric Companies. *Franchises*, Special Rights. Legislative Consent. *Stat. 1885, c. 378; 1895, c. 102. Priv. & Spec. Laws, 1893, c. 607.*

1. When a corporation, person or firm, is already authorized to do an electric lighting business in a town, another corporation, organized under chapter 102 of the Laws of 1895, cannot lawfully do a gas lighting business in the same town, until specially authorized by the legislature.

2. Nor is the result different, even if the electric light company has not done, and is not doing, business as such.

3. Under the provision of section 1, chapter 102, of the Public Laws of 1895, that no corporation organized thereunder "shall have authority, without special act of the legislature, to make, generate, sell, distribute or supply

gas or electricity, or both, for any purpose, in or to any city or town, in or to which another company, person or firm, are making, generating, selling, distributing or supplying, or are authorized to make, generate, sell, distribute or supply gas or electricity, or both, without the consent of such other company, person or firm," *it is held;* that authority in one company to supply either gas or electricity, or both, is prohibitive of the right of another company to supply either, unless by consent, or by special legislative authority.

4.   Prior to 1895, no general franchise rights, such as franchises to dig up the streets, to lay pipes for gas, and to erect poles and string lines of wire for electricity, existed in any company or person, except by special authority of the legislature.

5.   The permissive rights given by chapter 378 of the Public Laws of 1885, "regulating the erection of posts and lines for the purposes of electricity" were not such franchises.

6.   Prior to 1895, the legislature reserved to itself the right, in each instance, to determine whether the public good demanded that such franchises should be granted at all to any one, and in case such franchises were already lawfully exercised in a given place or had previously been granted, to determine whether or not it would be for the public good to permit indiscriminate or destructive competition.

7.   By chapter 102 of the Public Laws of 1895, the policy of the legislature was modified to this extent: In towns where no gas or electric company is supplying, or is authorized to supply, gas or electric light, new corporations, organized under that chapter, can supply either gas or electricity, or both, and use the streets therefor, by first obtaining the statutory permit from the municipal officers, and without special legislative authority. But in towns where a gas or electric company is supplying, or is authorized to supply, either or both kinds of light, another corporation, organized under the general law, cannot operate until the legislature has determined whether the public good requires it, and has authorized it, just as it did prior to 1895.

See *State of Maine by Information of Attorney General* v. *Twin Village Water Company,* ante, p. 214.

On report.   Bill for injunction sustained.

This was a bill in equity brought by the Twin Village Water Company praying for both a preliminary and permanent injunction against the Damariscotta Gas Light Company, its servants and agents, to enjoin and prohibit it and them from making, generating, selling, distributing or supplying light for any purpose in or to said town of Damariscotta, to individuals or corporations therein, or to said town, and from using the streets, highways and public roads in said town therefor.

The case having come on to be heard on bill and answer and replication, the presiding justice reported the case to the law court to render such judgment thereon as the rights of the parties might require. It was agreed that all acts of the legislature referred to in the bill and answer, also any other private act in reference to the same, may be referred to by the court. The parties also stipulated that the testimony taken out in the case of the *State of Maine by Information* v. *Twin Village Water Company*, ante, p. 214, was to be regarded as evidence in this case.

*Enoch Foster and O. H. Hersey; C. E. and A. S. Littlefield; K. M. Dunbar*, for plaintiff.

The right of the plaintiff to furnish and distribute electricity in the towns of Newcastle, Damariscotta and Nobleboro, having once attached and vested under this charter, continues until there is a judicial judgment of forfeiture of this franchise. *Boston Glass Manf.* v. *Langdon*, 24 Pick. 49, 35 Am. Dec. 294.

The question here involved is not strictly as to the right of the plaintiff, but is a question as to the right of the defendant, and whether the defendant here has any authority to furnish light, and thus interfere with the right that it must be admitted is in the plaintiff until judicially declared forfeited. It is then really a question as to what rights have been conferred upon the defendant. The statute then under which the defendant claims a right to act is to have a strict construction against the defendant; for as claimed by the defendant it is granted a part of the public right by the act of the legislature under which it is organized, and that grant, by well fixed rules of interpretation, is to be construed in favor of the State against any conferring of the sovereign authority by way of implication.

While in one sense the final clause of section one may be thought to be a restriction, it is in reality only a defining of the powers obtained by an organization under this general law. It is, therefore, simply a definition of the grant of the State to a corporation organized thereunder, and must be construed against the corporation in favor of the State.

It is a canon of interpretation that the legislative purpose and the

object aimed at are to be borne in mind, and that language suscepti-
ble of more than one construction is to receive that which will bring
it into harmony with such object and purpose rather than that which
will tend to defeat it.

Statutes are to receive such a construction as must evidently have
been intended by the legislature. To ascertain this we may look to
the object in view; to the remedy intended to be afforded; and to the
mischief intended to be remedied. *Winslow* v. *Kimball*, 25 Maine,
493.

Under proper regulations and restrictions the public is best served,
the public duty best performed, in those matters which involve the
exercise of some public franchise by one individual or one association
if individuals. Public utilities are in their nature monopolies. The
policy of our State has been to allow corporations whose purposes do
not require the exercise of any part of the public right, to be organ-
ized by virtue of the general statute, but the legislature has retained
in itself the right to determine in each individual case under the par-
ticular circumstances affecting that case, or corporation, whether any
part of the general public franchise or right, should be conferred
upon it.

Chapter 102 of the Public Laws of 1895 was enacted for the
purpose of organizing companies for the distributing light. It had
reference to this general class of corporations. Gas and electricity
are mentioned because gas and electricity are the only systems of
lighting adapted to general distribution through a central station.
The scope of the statute is not gas and electricity as separate things,
but its scope is light. If there is not a field for two electric light
companies or for two gas companies, and whether there is or not, the
legislature has clearly reserved for its own determination, there is
ordinarily not a field for a gas company and an electric company.

The purpose of the proviso in this statute is to protect the com-
pany first occupying the field and furnishing light until in the judg-
ment of the legislature there shall be necessity for more than one
such corporation. A narrow construction saying that gas excludes
gas, and electricity excludes electricity, would therefore by no means
comport with the scope or accomplish the purpose of such laws.

*H. M. Heath, C. L. Andrews and F. L. Dutton; Howard E. Hall,* for defendant.

The statute clearly contemplates, as a matter of fair meaning, and also as a matter of English, three classes of corporations: (1) A corporation for the purpose of supplying gas; (2) a corporation for the purpose of supplying electricity; (3) a corporation for the purpose of supplying gas and electricity. These conclusions necessarily flow from the phrase in the opening sentence, "corporations for the purpose of . . . supplying gas or electricity, or both."

Great care is taken in the structure of each component part of the sentence to preserve the classifying expression "gas or electricity or both." The phrase "gas or electricity or both," the three constituent parts being connected by the word "or", demonstrates as a matter of English that the entire sentence can be split up into three different sentences, the word "or" being used entirely in the interest of compactness.

This construction is in harmony with the long established legislative policy prior to 1895 when the electric light became a commercial possibility. It is a matter of common knowledge that gas plants were in operation in Portland, Bangor, Lewiston, Biddeford, Augusta, Calais, Gardiner, Bath, Brunswick, Saco and perhaps other places. It is equally a matter of common knowledge that electric light charters were freely granted as a matter of course, and the question never raised that there was any breach of good faith upon the part of the State in allowing franchises for the new light. It has long been the legislative policy in Maine to protect capital invested in public franchises, in their nature quasi monopolies, so long as the public duties were fairly and reasonably performed. No such plea was asserted by the gas companies as the electric light charters were granted from time to time. It is a matter of common knowledge that such charters were freely granted with no thought that there was any competition to be protected.

The reason is plain. The different lights have different fields. Electricity is the light for out-of-door work, stores and large interiors; gas the residential and small room light, useful also for cooking and small heating. Each has its own field in the public service.

We respectfully submit that there is no good moral reason, and certainly no reason founded upon public policy, why any investment in electricity should be protected against any supposed incidental competition from a gas plant, or the reverse.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. The plaintiff corporation was chartered by special act of the legislature, Private and Special Laws of 1893, c. 607. It was authorized "to furnish water for the extinguishment of fires and for domestic, sanitary and municipal uses to the towns of Nobleboro, Newcastle and Damariscotta, and the inhabitants thereof, and to furnish electric lights for lighting streets in said towns, and to dispose of electric light and power to individuals and corporations." By section 11 of the incoporating act as subsequently amended, it was provided that "in case no portion of the works of this corporation shall have been put into operation within two years from the date of the approval of this act, the rights and privileges herein granted shall be null and void." The corporation, within the four years after the approval of the act, did put into operation a water system, but it has never operated an electric lighting plant, nor made any provisions therefor, except, as it claims, it built its pumping station of sufficient size, and installed boilers and engines of sufficient capacity, to operate an electric lighting plant, in addition to the requirements for pumping.

The defendant is a corporation organized, subsequently to the incorporation of the plaintiff, under the general laws of the State relating to the incorporation and control of gas and electric companies. Laws of 1895, ch. 102. The defendant is a gas company and it admits that in accordance with the purposes expressed in its articles of incorporation, it intends, unless enjoined, to make, generate, sell, distribute and supply light (gas) in and to the town of Damariscotta, and to persons and corporations therein.

The plaintiff claims, inasmuch as it was itself authorized, prior to the incorporation of the defendant, to make and supply electricity in

and to Damariscotta, that the defendant has no authority, in the absence of special legislative authority, to make and supply gas in the same town, and seeks an injunction.

The plaintiff relies upon the last sentence in section 1, ch. 102 of the Laws of 1895, under which chapter the defendant was incorporated. It reads as follows:—"But no corporation, organized hereunder, shall have authority, without special act of the legislature, to make, generate, sell, distribute or supply gas or electricity, or both, for any purpose, in or to any city or town, in or to which another company, person or firm, are making, generating, selling, distributing or supplying, or are authorized to make, generate, sell, distribute or supply gas or electricity, or both." And the only question presented for our consideration, is whether, when a corporation, person or firm is already authorized to do, but is not doing, an electric lighting business in a town, another corporation organized under chap. 102 of the Laws of 1895, can lawfully do a gas lighting business in the same town, unless specially authorized by the legislature. We think the question must be answered in the negative.

The learned counsel for the defendant contend that it should be determined from the language itself that "the legislature has said in terms that no corporation organized to supply gas can without special act of the legislature supply gas in any town where another company is authorized to supply gas;" nor can a company organized to supply electricity do so without like special authority, in a town where another company is authorized to supply electricity; nor can a company organized to supply gas and electricity, do so, without special authority in a town where another company is authorized to supply gas and electricity. It is argued that the use of the phrase "gas or electricity or both," the three constituent parts being connected by the word "or," demonstrates as a matter of English that the entire sentence can be split up into the three different sentences, the word "or" being used entirely in the interest of compactness. To express the contention more pointedly, it is that, by fair construction of the statute, authority to supply gas is prohibitive of another corporation's right to supply gas and gas alone; of electricity, is prohibitive of electricity alone, and of gas and electricity is prohibitive of both; and

conversely, authority to supply electricity is not prohibitive of gas, to be supplied by another.

If such were the intended meaning of the legislature the language chosen to express it was singulary unfortunate, even as an effort at compactness.   It seems perfectly clear to us that the intended meaning is otherwise.   Language could hardly make it clearer.   To construct three sentences out of this one and oppose gas to gas, electricity to electricity, and both to both, and not otherwise, is something that the court cannot do.   The legislature by amendment can.   The act plainly says that no corporation organized under the general law shall supply gas in a town where another corporation is authorized to supply gas, or where it is authorized to supply electricity, or where it is authorized to supply both.   And under the same conditions, such corporations cannot supply electricity or both gas and electricity.   The defendant coporation is within the second alternative just expressed.   It cannot lawfully supply gas in a town where the plaintiff is authorized to supply electricity.

It should be observed that corporations organized under the act of 1895 are quasi public corporations, and enjoy valuable public franchises.   Besides the general franchise to do business they possess authority to dig up the streets, to lay pipes for gas, and to erect poles and string lines of wire for electricity, having first obtained permit from the municipal officers.   Such franchises, of course, can be acquired only by authority of the legislature, either general or special. And no general rights, such as these franchises, existed prior to 1895, except the permissive rights given by chap. 378 of the Public Laws of 1885, "regulating the erection of posts and lines for the purposes of electricity."   That act granted no franchises.   Prior to 1895, it had seemingly been the policy of the legislature to keep the granting of such franchises within its own hands, to grant or withhold them as it deemed best, to determine whether the public good demanded that such franchises should be granted at all to any one, and in case such franchises were already lawfully exercised in a given place to determine whether or not it would be for the public good to permit indiscriminate and perhaps destructive competition.

Although the organization of many kinds of corporations had been

provided for by general laws, even of public service corporations like railroads, (with the approval of the railroad commissioners), still the legislature prior to 1895 reserved to itself the privilege of saying in each particular case whether the public good in a community which was served by a gas company, or by an electric light company, would be improved by granting a franchise to another gas company to dig up the streets for its pipes, or to an electric light company to further incumber the streets with its poles and wires; whether the first company had failed to exercise its franchise fairly and upon fair terms; whether the public good required its investments to be jeopardized, and whether, in fine, there was any such need of more or different light as would justify the granting of such franchises. And in the same manner it made its determinations, if another company was authorized to supply, but was not actually supplying, light.

As we construe the act of 1895, the former policy of the legislature was modified by that act to this extent. In towns where no gas or electric company is supplying or is authorized to supply gas or electric light, new corporations, organized under the general law, can supply either gas or electricity, or both, and use the streets therefor, by first obtaining the statutory permit from the municipal officers. But in towns where a gas or electric company is supplying, or is authorized to supply, either or both kinds of light, another corporation organized under the general law cannot operate until the legislature has determined whether the public good requires it, and has authorized it, precisely as was done prior to 1895.

The plaintiff corporation is authorized to supply electricity to and in Damariscotta. The defendant corporation cannot lawfully supply gas in the same territory, without special act of the legislature. If it should do so, in accordance with its admitted intention, it would be to the injury of the plaintiff's right. The temporary injunction already granted should be made perpetual, and a decree to that effect will be made below.

*So ordered.*