ELLEN H. DURYEA, In Equity

*vs.*

ELKHORN COAL AND COKE CORPORATION, Appellant.

York.    Opinion April 11, 1924.

*There is a resemblance between statutory limitation and the doctrine of laches but a difference in important particulars.    Limitation is concerned with the fact of delay, while laches with its effect.    Laches is not merely delay but is delay that prejudices or works a disadvantage to another.    There is also a marked distinction between abandonment and laches.    Abandonment is voluntary and intentional, while laches defeats intention and operates in invitum.    To prove abandonment of property, clear and unmistakable affirmative act or acts indicating a purpose to repudiate ownership must be shown.*

In the instant case in 1909 the plaintiff was admittedly entitled to receive certain stock of the defendant corporation.  The stock certificate has never been delivered to her, nor was it demanded by her until 1921 when her demand for it was refused on the ground that through laches or abandonment she had forfeited her right to the stock.

Inasmuch as her delay is not shown to have caused substantial prejudice to any other person, she has not lost her right to the stock through laches, and there being no evidence of any affirmative act indicating an intention to repudiate ownership, her stock has not been forfeited by abandonment.

On appeal.  A bill in equity seeking to compel the defendant corporation to issue twenty-one hundred and seventy-five shares of its capital stock, of the par value of one hundred dollars per share, to the plaintiff.  The defendant corporation in its answer contended that through laches and abandonment the plaintiff had lost her rights to the stock.  A hearing was had before a single Justice who found for the plaintiff and ordered the stock to be issued, and defendant entered an appeal.  Appeal dismissed.

The case is fully stated in the opinion.

*Leonard A. Pierce* and *F. D. Putnam,* for plaintiff.

*W. B. Skelton and Robert H. Holt,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, DEASY, JJ.

DEASY, J.   The defendant, Elkhorn Coal & Coke Corporation, is a Maine organization.   In 1905, a Virginia corporation, bearing the same name, transferred and conveyed to the defendant all of its property and rights.   By reason of this transaction and the corporate votes authorizing it, the plaintiff, Ellen H. Duryea, a stockholder of the Virginia company, became entitled to receive twenty-one hundred and seventy-five shares of the defendant's stock.   She did not ask that it be issued to her nor did she tender her old certificates until 1921 when her demand for the stock was refused.   Whereupon she brought this bill praying that the defendant be required to issue to her twenty-one hundred and seventy-five shares of its stock. The defendant sets up the plaintiff's laches.

At the hearing before a single Justice there was much evidence, not now pertinent, relating to the history of the Virginia corporation.   The case was further complicated by a second bill brought by one Charles E. Hellier who sought to intervene and to show that he and not the plaintiff was entitled to the stock in question.   But Mr. Hellier's bill was dismissed and no appeal taken.   Therefore the question now before the court is whether the defendant is, by reason of her laches, absolved from the duty of issuing to her twenty-one hundred and seventy-five shares of its stock.

The doctrine of laches is peculiar to equity jurisdiction.   It somewhat resembles statutory limitation but differs from it in important particulars.   Limitation is concerned with the fact of delay; laches with its effect.   "Laches is negligence or omission seasonably to assert a right.   It exists when the omission to assert the right has continued for an unreasonable and unexplained length of time and under circumstances where the delay has been prejudicial to an adverse party and when it would be inequitable to enforce the right."   *Leathers* v. *Stewart*, 108 Maine, 101.   Laches "is not mere delay but delay that works a disadvantage to another."   10 R. C. L., 396.

In applying the law to the pending case we thus summarize the essential facts:   The defendant has always been a holding company. So also in 1905 was the Virginia corporation.   The property which the latter corporation in 1905 transferred to the defendant consisted of stock in the Big Sandy Company, a mining corporation, organized

in Maine and owning large tracts of land in Virginia and Kentucky. At the time of transfer the stock of these corporations, being subject to three hundred thousand dollars in bonds, was worthless. The lands though containing large coal deposits were then undeveloped, isolated and almost inaccessible. But in 1906 the region was tapped by a railway. Since then the land has been developed. The stock has become greatly enhanced in value. The defendant's stock having a par value of one hundred dollars per share is probably worth par.

It cannot be plausibly maintained that before 1909 the plaintiff was guilty of laches. Until the latter year no stock in the defendant corporation was issued to anybody. In 1909 the defendant's officers caused stock certificates to be made in the name of the several persons entitled to the stock including the plaintiff. The plaintiff did not receive her stock. She did not refuse to receive it. She remained quiescent. Prior to 1921 she was not informed that her right to the stock was disputed. Her right in fact was not disputed. It was recognized in returns made by the company's officers to the Secretary of State and in the notice of the annual meeting in 1909 which was the first corporate meeting held in ten years. In June, 1920, Colonel Gaston, then the president of the defendant corporation and representing a large stock interest, consulted the plaintiff's attorneys with the view of having the plaintiff take her stock and act with him or his clients in controlling and improving the company's management. This proposal was not refused. It was evidently considered. But it was not carried into effect. On the 18th of May following (1921), the plaintiff made formal demand for her stock, and on March 25th, 1922, brought this bill in equity to compel the issuance to her of twenty-one hundred and seventy-five shares of stock, worth about two hundred thousand dollars.

The defendant contends that she, by reason of laches has forfeited this stock and all interest in it.

That her delay should have this effect it must appear that it has been prejudicial to or worked to the disadvantage of another. See *Leathers* v. *Stewart*, supra, and numerous other authorities.

It goes without saying that the corporation as such has not suffered. This defense is obviously made in the individual interest of stockholders whose holdings will be increased some two hundred thousand dollars in value if the defense prevails.

It does not appear that stockholders have been substantially prejudiced. During what counsel for the defendants aptly term "the lean and anxious years" stockholders submitted to voluntary assessments to pay taxes and other necessary expenses. For these purposes the plaintiff contributed more than ten thousand dollars which has never been repaid. Other stockholders contributed as much or more and kept up payments longer than she did. But it is not shown that any such payments were made, or that they were needed, after 1909 when the defendant first issued its stock to those entitled to it. Before 1909 rail communication had been established. In 1909 the defendant's prosperity had in some degree begun. After 1909 the corporation seems to have been self-sustaining.

For many years no change has taken place in the stock ownership. No stock has been purchased upon any misunderstanding as to the plaintiff's interest.

The defendant's main reliance is upon his argument that the plaintiff by her delay escaped the stockholder's statutory liability which those who took their stock assumed. It is said that if she prevails in this suit other stockholders will have been prejudiced through carrying this burden not only for themselves but for her. The defendant is right in his assumption that those who took stock were subject to a possible contingent liability. If the corporation had incurred debts not secured by mortgage; if there was a deficiency of corporate assets and if the stock were shown to have been issued for property at less than a bona fide and fair valuation stockholder's statutory liability would attach. But the defendant was and is a mere holding company. True as a stockholder in the Big Sandy Company it perhaps incurred a statutory liability which might have been passed on to its stockholders. They could not have claimed immunity under R. S., Chap. 51, Sec. 54. Section 54 which provides that under certain circumstances the judgment of the directors as to the value of property purchased for stock shall be conclusive does not apply to a case like this. The corporation whose stock was purchased was not a producer of "materials or other property necessary for its (the defendant's) business." A mere holding company has no business for which within the meaning of the statute "materials or other property" are necessary.

But it cannot be claimed successfully that the plaintiff was guilty of laches before 1909. After that date the possible contingent

liability of stockholders seems not to have been a matter of serious consequence. The defendant was doing no business. For ten years it held no meetings. The Big Sandy Company was engaged merely in leasing coal mining privileges. Apparently no debts of consequence were being incurred except taxes which were presumably a first lien on the land and the salary of one of the stockholders who was managing the affairs of the corporation. It is not attempted to be shown that there was ever after 1909 any deficiency or reasonable apprehension of deficiency of corporate assets. During some years Mrs. Duryea escaped a theoretical liability. We do not think that for this reason her stock worth two hundred thousand dollars should be forfeited. The punishment would not fit the crime.

The single Justice who heard the case held that "It is apparent that Mrs. Duryea's delay has in no way worked to the disadvantage of the defendant company or any of the other parties in interest." We think that this conclusion is justified by the evidence. At all events, it is not manifestly wrong.

It is further contended by the defendant that the plaintiff has lost her rights through abandonment. Abandonment and laches are radically different. Abandonment effectuates intention. Laches defeats intention. Abandonment is voluntary. Laches operates in invitum. 1 C. J., 5; *Wolff* v. *Railway*, (Cal.), 56 Pac., 453. The purpose of the delay imputed to the plaintiff by the defendant is inconsistent with abandonment. Moreover, to prove abandonment "there must be some clear and unmistakable affirmative act or series of acts to indicate a purpose to repudiate ownership." 1 R. C. L., 5; 1 C. J., 7. Proof of abandonment "must be clear and unequivocal of acts decisive and conclusive." *McLellan* v. *McFadden*, 114 Maine, 249; *Adams* v. *Hodgkins*, 109 Maine, 365.

The defendant relies upon the plaintiff's inaction. The only acts affirmatively shown on her part indicate an intent not to abandon. She retrieved her stock from Hellier in 1909. Through her counsel she negotiated with Gaston about it in 1920. Later she demanded it and brought this suit. No other act on her part appears.

Proof of laches fails because it is not shown that the plaintiff's delay in taking her stock was substantially prejudicial to any other person. Proof of abandonment fails inasmuch as no unequivocal act appears indicating an intent to abandon.

Authorities cited by the learned counsel for the defendant differ from the instant case in one or both of two important particulars. In most of the cases the plaintiff's rights were conditional upon payment by him of money or its equivalent. Delay in such payments until its profitableness becomes manifest is held to constitute laches. But in the present case the plaintiff was entitled to her stock without payment. If necessary to surrender her stock in the Virginia company this old stock had no value for any other purpose except to surrender.

In other cases the plaintiff asked the court to declare void a transfer or conveyance. A right to avoid and nullify a transfer or conveyance must be exercised promptly. In the present case the plaintiff seeks not to nullify but to ratify the transfer to and by the defendant. She claims not against but under that transaction.

*Banks* v. *Judah*, 8 Conn., 145, cited by the defendant's counsel lends support to the defendant's contention, but in the instant case we think it clear that the defendant has not shown any positive acts indicating an intention to abandon, and has failed to prove such prejudice to others as to justify this court of equity in holding that the plaintiff's stock is forfeited by reason of her laches.

*Appeal dismissed.*