Daniel A. Shea, of Boston, Mass., for libelant.

George A. Saxon, of Providence, R. I., for defendant.

BREWSTER, District Judge.

This libel is brought in "a cause of possession, civil and Maritime" to recover the steamship Port Hunter, now lying submerged upon Hedge Fence Shoal, Vineyard Sound. The Port Hunter is claimed by the Maritime Construction & Salvage Corporation.

Statement of Facts.

1. At some time in 1918, the steamship Port Hunter was in a collision off Vineyard Haven and drifted onto Hedge Fence Shoal and sank in about 75 feet of water so that the hull was completely submerged, the bow being about 40 feet down. Two masts appeared above the water. Under stress of weather one of the masts was later swept away but the other still remains to mark the whereabouts of the sunken vessel.

2. The wreck was abandoned to underwriters which through its duly authorized agents on July 12, 1920, sold and transferred the wreck and its appurtenances to William T. A. Fitzgerald, as trustee for the libelant, the libelant paying in cash the full purchase price. Subsequently the trustee conveyed his interest to the libelant.

3. From 1920 to the present day, the Port Hunter has been allowed to remain where she sank. During the salvaging of some of her cargo, buoys were set about the Shoal by government officials. On June 12, 1933, the libelant employed a diver to anchor a buoy over the boat. For some reason or other this only stayed in place for a short time. Except as above stated, neither the government officials nor the owner have taken any steps to mark the vessel. The fact that the boat was on a shoal against which navigators were duly warned by long established buoys and that the vessel's mast at all times appeared above the water no doubt led the owner and authorities to regard further marking as unnecessary.

4. Since the purchase, the trustee and the libelant negotiated with cargo owners with reference to salvaging the cargo; had employed divers to go down into the holds; and had employed a resident of Vineyard Haven to keep watch of the wreck to see that no one molested it or the cargo.

5. There was evidence adequate to establish the fact that the libelant at no time intended to abandon the vessel. In fact, as late as September, 1933, he was in conference with one T. J. Smith, of Providence (claimant's alleged predecessor in title), about salvaging the hull and its contents. No agreement was reached, as the assurances requested by libelant that Smith would carry out his part of the contract were not forthcoming.

6. On October 1, 1933, Smith proceeded to the vicinity of the wreck with witnesses, and, after placing a buoy, consisting of a barrel and weight, over the sunken vessel, he put in the barrel a copy of a formal document, signed by him, wherein he recited his intention to seize and take possession "as a result of the abandonment by the one time owner" of the Port Hunter. He also recited that the boat was sunk in latitude 41—30 N. and longitude 71—30 W. in about 55 feet of water; that it had been submerged for over 12 to 15 years; that there were not, and for many years had not been, any markers or buoys indicating ownership over the boat or on nearby waters; and that he was placing his marker over the vessel as indicating his ownership. This statement was supported by affidavits, not under oath, of his witnesses who participated in the anchoring of markers over the ship.

7. The claimant is a Rhode Island corporation, of which said Smith is treasurer, and it was alleged that Smith had transferred all his interest in the Port Hunter to this corporation. I do not understand that there is any dispute respecting the transfer of whatever rights Smith had in the vessel from Smith to the corporation.

8. As soon as the claimant was seen removing machinery from the hull, notice was sent to the libelant by the party whom he had employed to keep a watch upon the wreck and, as a result, these proceedings were instituted.

Conclusions of Law.

At the outset it may be said that the good faith of Smith and his corporation, the claimant here, is open to serious question. No one knew better than Smith that the libelant claimed to be the owner and that he had no intention of abandoning the wreck. I know of no principle of admiralty law which enables one to "stake out" a claim to a derelict by floating over it barrels and depositing in one of the barrels the very elaborate document to which I have referred in the sixth paragraph of my findings of fact. In any event, I am satisfied that property

rights cannot be acquired in any such manner. Whitwell et al. v. Wells et al., 24 Pick. (Mass.) 25; Duryea v. Elkhorn Coal & Coke Corp., 123 Me. 482, 124 A. 206; Merrill v. Fisher, 204 Mass. 600, 91 N. E. 132, 134 Am. St. Rep. 706, 17 Ann. Cas. 937.

In Whitwell v. Wells, supra, the court said at page 30 of 24 Pick. (Mass.):

"The salvors had a claim paramount to all others. They had the control, so far as was necessary, to enforce this claim. But their interest in the goods did not amount to ownership. By finding vessels or other chattels upon the ocean, the finders do not become the owners. The property remains as before, subject only to the right of salvage. This right is merely a lien, a right to retain the goods till the salvage be paid. This must stand essentially on the ground of other liens; and would give no right to pledge or sell the property. Martini v. Coles, 1 Maule & Selw. 140; Shipley v. Kymer, 1 Maule & Selw. 484; Corlett v. Gordon et al., 3 Campb. 472. The salvors, therefore, had no authority to make a sale or consignment to the plaintiffs. And if they had done either, the act would have been unauthorized and inoperative."

While this case was decided many years ago in the state court, I believe it presents an accurate statement of the law. When a derelict is discovered on the high seas and it is salved, the salvors have a right of possession in the nature of a lien until they have been reimbursed by the owner. I have found no authority for the proposition that the salvor acquired absolute title, good against the owner.

The River and Harbor Act of March 3, 1899, §§ 15, 19, 20 (33 U. S. C. §§ 409, 414, 415 [33 USCA §§ 409, 414, 415]), did not confer upon the claimant or Smith any rights to seize the Port Hunter in the manner described. The purpose of this statute was to impose a positive duty upon the owner of a sunken vessel to mark and remove it promptly if in navigable waters and obstructing or endangering navigation and to relieve the United States of all liability after a specified period, in the event that it removed, sold, or otherwise disposed of the sunken craft.

While for the purposes of the statute there may be an abandonment after a lapse of time, it is not such an abandonment as will operate to terminate the rights of the owner. Abandonment is said to be a voluntary act

which must be proved by a clear and unmistakable affirmative act to indicate a purpose to repudiate ownership. Duryea v. Elkhorn Coal & Coke Corp., supra. I have found as a fact that no such positive intention existed in this case.

I conclude, therefore, that the libelant is entitled to recover possession, and the claimant has no right nor interest in the Port Hunter which this court can recognize.