## ZUBIK v. UNITED STATES.

### No. 10449.

United States Court of Appeals Third Circuit.

Argued June 7, 1951.

Decided July 11, 1951.

———◆———

Thomas E. Whitten, Pittsburgh, Pa. (Alvin J. Porsche, James F. Callahan, Pittsburgh, Pa., on the brief), for appellant.

Patrick F. Cooney, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., J. Frank Staley, Washington, D. C., W. Wendell Stanton, Pittsburgh, Pa., on the brief), for the United States.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal raises objections to the seizure and proposed sale by the United States of a river barge alleged to belong to appellant.

On April 5, 1951 a libel in personam under the Suits in Admiralty Act was filed in behalf of appellant Zubik against the United States in the District Court for the Western District of Pennsylvania. The libel asserted that on November 28, 1950 an iron-laden steel barge belonging to American Barge Lines Co. broke loose from its moorings in the Allegheny River at Pittsburgh, struck a pier and sank to the bottom of the navigable channel. The United

States Engineers at Pittsburgh directed the American Barge Lines to remove the sunken barge by March 5, 1951. It is alleged that high water, strong current and ice made the removal of the pig iron and the barge exceedingly difficult. The pig iron was removed by March 5, 1951, but not the barge. On March 7, 1951, while the barge was still on the bottom of the river, American Barge Lines sold it to Zubik and notified the United States Engineers of this. Zubik, the libel continues, immediately began making preparations to raise the barge, but bad weather and temporary lack of proper equipment prevented his doing so. On March 10, 1951 the United States Engineers, without notice to Zubik, raised the barge from the bottom of the river and took possession of it. Zubik says he offered to pay the expenses of this removal and asked return of the barge, but this was refused and the government has announced its intention to offer it for public sale. The relief sought is return of the barge upon payment by him of removal expenses.

On April 10, 1951, five days after the filing of the libel, and before any responsive pleading had been filed, Zubik presented to the District Court a petition seeking a rule on the commander of the Army Engineers to show cause why the barge should not be returned to Zubik and an order restraining the proposed sale until determination of the proceeding upon its merits. The petition was denied by the District Court without opinion. Zubik appealed.

We pass over several interesting points regarding the appealability of the order complained of and whether the United States has consented to be sued in the manner pursued here. We assume both without deciding either, because we conclude that appellant has stated no cause of action on the merits and that the libel should be dismissed.

Libellant states in his libel that the United States Engineers in removing his barge were acting pursuant to Section 19 of the Act of 1899, 33 U.S.C.A. § 414. That Act provides, in pertinent part: "Whenever the navigation of any river * * * or other navigable waters of the United States shall be obstructed or endangered by any sunken vessel, boat, water craft, raft, or other similar obstruction, and such obstruction has existed for a longer period than thirty days, or whenever the abandonment of such obstruction can be legally established in a less space of time, the sunken vessel * * * shall be subject to be broken up, removed, sold or otherwise disposed of by the Secretary of War [now Army] at his discretion, without liability for any damage to the owners of the same: *Provided,* That in his discretion, the Secretary of War may cause reasonable notice of such obstruction * * * to be given by publication * * * requiring the removal thereof: * * * *Provided further,* That any money received from the sale of any such wreck, or from any contractor for the removal of wrecks, under this paragraph shall be covered into the Treasury of the United States."

The libel itself discloses that the barge sank in the navigable portion of the Allegheny River on November 28, 1950. The United States Engineers directed its owners to remove it, and this was not done. Finally on March 10, 1951, three and one-half months after the sinking, the Engineers stepped in and removed the barge and propose to put it up for public sale. All this appears to be in strict accordance with the provision quoted above. Of what, then, does appellant complain? We consider his points in order.

■ (1) It is asserted that the barge was not in fact abandoned. This is immaterial. Under statute the Secretary of the Army is given the right to remove an obstruction which has existed for over 30 days, "or whenever the abandonment of such obstruction can be legally established in a less space of time." We read this language to mean that the obstruction may be removed and disposed of by the government if it is not removed by the owner within 30 days, regardless of whether the owner actually in fact intends to abandon the vessel. Failure to remove for 30 days amounts to a forfeiture to the United States in the event that

the Secretary takes action under the Act,[1] regardless of effect or lack of effect as to others.[2]

■ (2) The second contention is that the government acted arbitrarily in failing to give appellant 30 days or a reasonable time to remove the barge after he bought it from American Barge Lines. It will be remembered that the deadline for removal set by the United States Engineers in its notice to American Barge Lines was March 5. Zubik acquired title to the barge on March 7, after the deadline. The Engineers removed the barge on March 10. This set of allegations we consider immaterial also. In the first place the statute makes the giving of notice to the owner to remove the obstruction a purely discretionary matter with the Secretary of the Army.[3] It is difficult to see, therefore, how removal without notice could be arbitrary or unreasonable. Moreover, according to the libel the Engineers did give adequate notice to American Barge Lines to remove the barge and of its intention to do so itself if this was not done by March 5. The purchase by Zubik did not give him rights over and above that of his transferor, as though he were a holder in due course of a negotiable instrument. Such a requirement as appellant contends for would make it possible to prevent removal of the vessel under this Section by the simple expedient of transferring title.

■ (3) It is next asserted that the barge is worth twice what it cost the government to remove it, and that therefore it was arbitrary and unreasonable for the government to refuse Zubik's offer to pay these expenses in exchange for the return of the barge. The language of the statute disposes of this contention. It provides that the vessel may be "sold, or otherwise disposed of by the Secretary of War at his discretion, without liability for any damage to the owners of the same" and that "any money received from the sale of any such wreck * * * shall be covered into the Treasury of the United States." It may be that this language permits the Secretary of the Army to do what appellant requests. But it expressly gives him the discretion to sell the barge and in such case all the proceeds must go into the Treasury. The courts cannot interfere with this discretion given him. It is immaterial that as a matter of hindsight it appears that the government stands to gain rather than lose by the deal. If the costs of removal exceeded the value of the barge the owner would not be liable for the difference.[4] He cannot conversely, claim the benefits simply because the salvage operations proved financially successful.[5]

■ (4) In the court below libellant made the assertion that his barge did not obstruct or endanger navigation. He repeats the assertion here. The government

1. Compare Section 15 of the Act: " * * * it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided for." 33 U.S.C. A. § 409.

2. See, e.g. Gulf Coast Transp. Co. v. Ruddock-Orleans Cypress Co., D.C.E.D.La. 1927, 17 F.2d 858; The Port Hunter, D. C.Mass.1934, 6 F.Supp. 1009.

3. 33 U.S.C.A. § 414, quoted at length, supra, provides: "Provided, That in his discretion, the Secretary of War may cause reasonable notice of such obstruction of not less than thirty days, unless the legal abandonment of the obstruction can be established in a less time, to be given by publication, addressed 'To whom it may concern,' in a newspaper published nearest to the locality of the obstruction, requiring the removal thereof: * * *."

4. Petition of Highlands Nav. Corp., 2 Cir., 1928, 29 F.2d 37; The Manhattan, D.C. E.D.Pa.1935, 10 F.Supp. 45, 49, affirmed, 3 Cir., 1936, 85 F.2d 427, certiorari denied, 1932, United States v. The Bessemer, 300 U.S. 654, 57 S.Ct. 432, 81 L.Ed. 864. Cf. Loud v. United States, 6 Cir., 1923, 286 F. 56; Orrell v. Wilmington Iron Works, Inc., D.C.E.D.N.Car.1950, 89 F.Supp. 418.

5. Section 20 of the same Act authorizes the government to remove a sunken vessel in less than 30 days if it is especially dangerous to navigation, but in such case the government gets only a lien for the costs of removal. 33 U.S.C.A. § 415.

contends that what does and what does not amount to a danger or obstruction to navigation is a question which cannot be interfered with by the courts, but must be left to the discretion of the Secretary of the Army.[6] We need not decide that question. The libel itself does not allege that Zubik's barge was not obstructing navigation while it was sunk in the river. At argument below on the petition for a stay this contention was first made. It was there stated that Zubik could prove in support of this contention that at the time the barge in question sank another barge, also belonging to American Barge Lines, sank with it, settled on top of it and protruded above the water. The argument was that it was the top barge, not the bottom one purchased by Zubik and involved here, which was the menace to navigation. The court below dealt with this reasoning adequately with the question: "Well, it obstructs the channel when it forms a foundation for another barge, doesn't it?" We think it is clear that it does, and therefore the only proof which Zubik proposes to offer in support of his assertion that his barge was not an obstruction to navigation merely proves that it was. For this reason we need not decide whether this question is one solely for the determination of the Secretary of the Army.

█ We conclude that, even assuming everything to be true as stated by libellant, the Secretary of the Army, acting through the local commander of the Army Engineers, was acting in strict accordance with the authority given him by the Act and that the libel therefore must be dismissed for failure to state a cause of action against defendant.

The order of the District Court is affirmed and the case remanded with directions to dismiss the libel.

HASTIE, Circuit Judge, (concurring).

To me it seems clear that the district court lacked jurisdiction to entertain this libel because this is a suit against the United States to which the United States has not consented.

In support of jurisdiction libellant relies upon the following provision of the Suits in Admiralty Act: "That in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation [wholly owned by the United States], as the case may be, provided that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation. * * *"[1] But that statute does not cover a wrecked vessel never possessed by the United States until government officers raised it from the river bottom and never used by the United States or any government corporation for any purpose. Therefore, I think the action should be dismissed for want of jurisdiction.

No disagreement with the views expressed by the court on the merits of the controversy is either expressed or implied. I do not reach that aspect of the case at all.

6. Cf. Monongahela Bridge Co. v. United States, 1910, 216 U.S. 177, 195, 30 S.Ct. 356, 54 L.Ed. 435; Loud v. United States, 6 Cir., 1923, 286 F. 56, 59.

1. 41 Stat. 525 (1920), 46 U.S.C.A. § 742.