**POLAND TELEPHONE COMPANY**

v.

**The PINE TREE TEL. & TEL. CO.**

Supreme Judicial Court of Maine.

April 5, 1966.

Skelton, Taintor & Abbott, by Frederick G. Taintor, Lewiston, for plaintiff.

McLean, Southard & Hunt, by Frank E. Southard, Jr., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

The Pine Tree Telephone and Telegraph Company (Pine Tree) appeals from the denial by the Public Utilities Commission of its request for an order that Poland Telephone Company (Poland) cease and desist from providing telephone service in a certain area (the disputed area) in Gray. The Commission in its decree said: " * * * we find that the Commission has no statutory authority to issue any order to any utility created by private and special act of the legislature and issued a franchise thereunder, to cease and desist from providing a service so authorized within its franchised area."

The facts are not in dispute. Poland first initiated service into the disputed area in 1927 and is at the present time providing the only available telephone service. Pine Tree has furnished telephone service in the Town of Gray since before 1927, but not within the disputed area, and states that it is willing and able to provide service therein. It contends that the service by Poland in Gray from its inception has been unlawful.

Pine Tree is a corporation organized in 1899 under the general laws of the State relating to the incorporation and control

of telephone and telegraph companies. P. L.1895, c. 103. Its authority to serve Gray is unquestioned.

Poland was chartered by special act of the Legislature, P. & S.L.1901, c. 322, § 2, which provides as follows:

"Section 2. Said corporation is hereby authorized to construct, own, maintain and operate telephone line or lines anywhere in the counties of Androscoggin, Oxford and Cumberland in the state of Maine, having obtained consent of the several municipalities, and said company shall have a right to locate and construct its lines upon and along any public highway or bridge in said counties, but in such a manner as not to incommode or endanger the customary public use thereof." (Gray is within Cumberland County.)

The pertinent statutes are as follows:

"§ 2301. *Organization*

Corporations for the operation of telegraphs or telephones, and corporations for the operation of both telegraphs and telephones, and corporations for the transmission of television signals by wire, and corporations for the purpose of making, generating, selling, distributing and supplying gas or electricity, or both, for lighting, heating, manufacturing or mechanical purposes, in any city or town, or 2 or more adjoining cities or towns, within the State, or for either or any of such purposes, may be organized under Title 13, sections 71 to 79. No corporation so organized or person or association shall have authority, without the consent of the Public Utilities Commission, to furnish its service in or to any city or town in or to which another corporation, person or association is furnishing or is authorized to furnish a similar service. Any corporation authorized to make, generate, sell, distribute and supply electricity may sell and distribute electricity to any other corporation similarly authorized.

"§ 2302. *Consent only after hearing*

No consent, authorized in section 2301, and no license, permit or franchise shall be granted to any person, association or corporation to operate, manage or control any public utility of the kind named in section 2301 in any city or town where there is in operation a public utility engaged in similar service or authorized therefor, until the Public Utilities Commission has made a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility."

"§ 2303. *Consent only to Maine corporations*

No consent authorized in section 2301 to operate, manage or control any public utility shall be hereafter granted to a corporation unless such corporation is duly organized under the laws of this State or authorized by such laws to do business in this State." 35 M.R.S.A. §§ 2301, 2302, 2303.

The decisive question is whether Poland may provide its services in the disputed area without a certificate of public convenience and necessity issued under Section 2302 by the Commission after hearing.

■ In our opinion Sections 2301 and 2302 are not applicable to a corporation specially chartered by the Legislature, as is Poland. In Section 2301 the phrase "no corporation so organized" plainly refers to corporations organized under 13 M.R.S.A. §§ 71–79 (the general law). Under Section 2302 the "consent" required is only that authorized in Section 2301. The two sections must be read together. The provisions for issuance of "no license, permit or franchise" in Section 2302 are not applicable. It is with "consent" that we are concerned.

Pine Tree urges that the regulation of the telephone business requires the judgment and decision of the Public Utilities Commission with reference to the authority of a second or competitive public util-

ity. The statutes should in Pine Tree's view be so construed. In short, Pine Tree's position is that there is no difference under the second public utility section between the corporation organized under general law and the corporation, such as Poland, specially chartered by the Legislature.

■ The regulation of public utilities is a function of the Legislature. In 1913 broad powers were delegated to the Public Utilities Commission in "An Act to Create a Public Utilities Commission, Prescribe its Powers and Duties, and Provide for the Regulation and Control of Public Utilities." P.L.1913, c. 129. The delegation of power, however, was not in 1913, and never has been, all inclusive but limited as the statutes have from time to time provided. Auburn Water District v. Public Utilities Commission et al, 156 Me. 222, 163 A.2d 743.

Section 2301 is unchanged from Section 27 in the 1913 Act with the exception of the inclusion of "and corporations for the transmission of television signals by wire" in the first sentence, and the addition of the last sentence relating to the sale and distribution of electricity. Section 2302 is Section 28 of the 1913 Act with inconsequential changes. "No such consent" has become "no consent, authorized in Section 2301." Sections 27 and 28 of the 1913 Act come to us as Sections 2301 and 2302, unchanged in scope and meaning insofar as Pine Tree and Poland are concerned.

Prior to 1895 it would appear that all telephone companies were specially chartered by the Legislature. P.L.1895, c. 103, the first statute permitting their organization under general law, reads in part:

"Sect. 3. *Corporations organized under the provisions of this act shall have authority,* except as herein limited, to construct, maintain and operate its lines upon and along the route or routes and between the points stated in its certificate of incorporation. *But no corporation organized hereunder shall have au-thority without special act of the legislature,* to construct its lines along the route or routes, used or authorized to be used, by any other telegraph or telephone company, person or firm, or between points connected, or authorized to be connected, by the lines of any such company, person or firm, *unless it shall first obtain the consent of such other company,* person or firm." (Emphasis supplied)

The second sentence of Section 3 prohibiting construction of lines along routes of certain other companies without special act of the Legislature unless consent of the other company had been · obtained was stricken from the law in 1903. P.L.1903, c. 141. In R.S.1903, c. 55, § 1, from which Section 27 of the 1913 Act was drawn, prohibition against infringement upon territories served by another utility was made applicable only to gas and electric companies. With the 1913 Act provision for consent of the Public Utilities Commission, analogous to the requirement of a special act of the Legislature or consent of a competing company, was made applicable to corporations organized under general law and to persons and associations.

Until the 1913 Act there is no suggestion that the Legislature had not reserved full authority over competition in telephone service. By the Act persons and associations not hitherto covered by laws relating to corporations in the field were brought within the scope of the second public utility section. We are of the opinion that in the 1913 Act the Legislature did not alter or restrict the franchise rights which had been granted by the Legislature. "But in towns where a gas or electric company is supplying, or is authorized to supply, either or both kinds of light, another corporation organized under the general law cannot operate until the Legislature has determined whether the public good requires it, and has authorized it, precisely as was done prior to 1895." Twin Village

Water Co. v. Damariscotta Gas Light Co., 98 Me. 325, 56 A. 1112.

The language, adding the provision for competitive service by consent, is equally applicable to the telephone company. P. L.1895, c. 103, § 3, supra.

In holding the prohibition against competition in the generation and sale of electricity did not apply to an individual, our Court said in Crawford Electric Co. v. Knox County Power Co. and Shaw, 110 Me. 285, 289, 86 A. 119:

"* * * The statute [R.S.1903, c. 55, § 1 now Sec. 2301], is confined to corporations subsequently organized under the general law and without express legislative authority."

See also Haines v. Crosby, 94 Me. 212, 47 A. 137, and East Boothbay Water Dist. v. Inhabitants of Town of Boothbay Harbor, 158 Me. 32, 177 A.2d 659.

The distinction between the telephone company specially chartered by the Legislature and that organized under general law has continued from 1913. In 1955, for example, the Legislature authorized the Public Utilities Commission to extend the service of a public utility beyond the territorial limitations of the specal act of the Legislature by which it was organized. 35 M.R.S.A. § 294. The statute provides, it may be noted, for the extension but not for the restriction of the authorized service area.

Section 2303 (Section 29 in the 1913 Act) is said to compel the construction of Sections 2301 and 2302 to cover Poland. We are of the view, however, that the limitation of Section 2301 to "No corporation so organized" eliminates effectively the corporation authorized under special act of the Legislature from its operation. We need not read Section 2303 to create a confusion not otherwise existing in Sections 2301 and 2302.

We may readily agree that a neat and orderly system of public utility regulation covering service of a second public utility in a city or town in which there is a public utility engaged in similar service or authorized therefor, should be applicable to the utility, as here Poland, created under special act of the Legislature. It seems strange to us, accustomed to the regulation of public utilities by a commission for half a century, that such provision was not made. The statute, however, was not so written in 1913 and no significant changes have since been made.

Poland does not escape regulation by the Public Utilities Commission by virtue of its charter. What it gained from the Legislature, and what is not available to the utility organized under general law, is the right to serve competitively within the area covered by its charter without consent of the Commission.

Poland comes within the following definitions which have remained without significant change since 1913.

35 M.R.S.A. § 15 provides:

"13. *Public utility.* 'Public utility' in-includes * * * telephone company * * *, as those terms are defined in this section, and each thereof is declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission, and to chapters 1 to 17."

* * * * * *

"19. *Telephone company.* 'Telephone company' includes every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any telephone line for compensation within this State."

It does not follow, in our view, from the definitions that the language of Sections 2301 and 2302 should be construed to extend the requirements of "consent" beyond corporations organized under the general law.

Pine Tree, on the record before us, has not complained of the service of Poland in the disputed area until now. Poland suggests that Pine Tree has waived any right to object to the service in light of this long period of nearly forty years of allegedly unlawful intrusion. In reaching our decision we find it unnecessary to consider, and we have not considered, issues touching waiver or abandonment of part of its service area by Pine Tree.

A certificate or declaration of public convenience and necessity under Section 2302 is not required to permit Poland to serve the disputed area in Gray. The Commission had no jurisdiction to consider the issue, and properly denied the request for a cease and desist order.

The entry will be

Appeal denied.