**STANDISH TELEPHONE COMPANY**

**v.**

**SACO RIVER TELEGRAPH & TELEPHONE COMPANY**

**and**

**Public Utilities Commission.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1988.
Decided March 14, 1989.

Glassman, J., filed a concurring opinion in which Roberts, J., joined.

Michael T. Healy (orally), Mary Ann Lynch, Verrill & Dana, Portland, for plaintiff.

Harold J. Carroll (orally), Rackemann, Sawyer & Brewster, Boston, Mass., for Saco River Tel. & Tel.

Joseph G. Donahue, Peter G. Ballou (orally), Deborah J. Ross, Maine Public Utilities Com'n, Augusta, for P.U.C.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

Standish Telephone Company ("Standish") appeals from an April 25, 1988 order of the Public Utilities Commission ("Commission") dismissing a petition concerning a long-standing territory dispute between Standish and Saco River Telegraph and Telephone Company ("Saco") for lack of jurisdiction. Concluding that the issue of the Commission's jurisdiction is *res judicata,* we vacate the order of dismissal.

Standish, a publicly regulated utility, was incorporated in 1907 under the general laws of the State of Maine. Pursuant to its certificate of incorporation, it was and is authorized to provide telephone service to the towns of Baldwin, Buxton, Hollis, Limington and Standish. Saco was created by private and special laws enacted by the Maine Legislature in 1889, 1895 and 1897 to provide telephone service to the towns of Buxton, Hollis and Standish.[1]

In the 1930's, Standish and Saco were disputing the territory to be served by each of them and the ownership of poles and other equipment within the disputed territory. In December 1938, Standish and Saco, in an attempt to resolve the dispute, entered into an agreement regarding telephone service in Buxton, Hollis and Standish. The agreement, in essence, separated the service territories of both companies, and established a boundary line between them. Under the agreement, Standish sold to Saco its property south of the geographic boundary line for $2100 and agreed not to serve any customers south of that line. Saco agreed not to serve customers north of the boundary line except those customers it was serving at the time. The agreement was conditional, subject to approval of the Commission. The Commission approved the agreement in a December 8, 1938 order.

In April 1986, Saco petitioned the Commission to investigate and resolve the boundary dispute that was the subject of the 1938 agreement and order, alleging that Standish was making incursions into territory that, under the agreement and order, was the exclusive territory of Saco.

After various motions were filed, on December 29, 1986, the Commission issued an order asserting its jurisdiction to interpret the 1938 order and to resolve disputes concerning its interpretation. However, on its own motion, the Commission reconsidered and reversed its December 1986 order, and, in its order of April 25, 1988, relied on *Poland Tel. Co. v. Pine Tree Tel. & Tel. Co.,* 218 A.2d 487 (Me.1966), and concluded that it had no jurisdiction in 1938 to enter the order approving the agreement between Standish and Saco. It further concluded that under the *Poland Tel.* decision it continued to lack jurisdiction over the territorial dispute between them.

In its appeal, Standish argues that (1) the 1938 agreement between Standish and Saco amounts to a petition to approve an abandonment of service and sale of property, and that the Commission acted within its jurisdiction in issuing its order approving the agreement; (2) the Commission had jurisdiction in 1938 and still has jurisdiction to resolve territory disputes between two utilities serving the same territory; and (3) irrespective of the Commission's lack of subject matter jurisdiction to enter the order in 1938, that order was not appealed by any party and the issue of the jurisdiction

---

1. P. & S.L.1889, ch. 432; P. & S.L.1895, ch. 103; P. & S.L.1897, ch. 482.

of the Commission is *res judicata.* The Commission joins Saco in contesting Standish's first two arguments, but joins Standish in its *res judicata* contention.[2]

Standish argues that even if the Commission lacked jurisdiction to limit the service territory of a legislatively created utility, it clearly did have jurisdiction to approve an abandonment of service and sale of property, and the 1938 petition to approve the agreement between Standish and Saco was in fact a petition to abandon service and to sell property pursuant to P.L.1933, ch. 155, later codified as R.S. ch. 40, § 47 (1944) (current version at 35–A M.R.S.A. § 1104 (1988)).[3]

■ Standish had the burden to demonstrate that by virtue of the petition, Saco intended to abandon territory and did in fact abandon it. *Doherty v. Russell,* 116 Me. 269, 273 (1917). *See also Duryea v. Elkhorn Coal and Coke Corp.,* 123 Me. 482, 486, 124 A. 206 (1924). The Commission found no abandonment, and we review the findings of the Commission for clear error. *New England Tel. & Tel. Co. v. Public Utilities Comm'n,* 390 A.2d 8, 32 (Me.1978). Because Standish had the burden, we will not disturb the Commission's

finding unless the evidence compelled the Commission to reach a different result. *Town of Eustis v. Stratton–Eustis Dev. Corp.,* 516 A.2d 951, 953 (Me.1986); *Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983). The 1938 petition did not mention the abandonment statute nor use abandonment language, and appeared to be a settlement of a service-area dispute entered into to avoid the Commission imposing a settlement on Standish and Saco. The evidence did not compel the Commission to find that Saco intended the 1938 petition to be an abandonment of service.

■ Standish next claims that the Commission had jurisdiction to enter the 1938 order and continues to have jurisdiction to deal with the subject matter of the order. Because we conclude that the Commission's jurisdiction to enter the 1938 order is *res judicata,* conclusively established by the Commission's 1938 exercise of that power in an order sought by the parties to the proceeding, and not appealed from, it is unnecessary for us to decide whether in 1938 the Commission had jurisdiction to approve an agreement between Standish and Saco limiting the service area of each company.[4]

2. Although the Commission joins Standish in urging us to conclude that their jurisdiction over the 1938 order is *res judicata,* the Commission felt bound to abide by its interpretation of *Poland Tel. Co. v. Pine Tree Tel. & Tel. Co.,* 218 A.2d 487 (Me.1966), and felt constrained from declaring its own jurisdiction under *res judicata* principles.

3. R.S. ch. 40, § 47 (1944), in effect in 1938, provided in pertinent part:

> **Sec. 47. Abandonment of property or service by public utilities....** No public utility as defined in this chapter shall abandon all or any part of its plant, property or system necessary or useful in the performance of its duties to the public, or discontinue the service which it is rendering to the public by the use of such facilities, without first securing the approval of the public utilities commission. In granting its approval, the commission may impose such terms, conditions or requirements as in its judgment are necessary to protect the public interest. Any public utility abandoning all or any part of its plant, property, or system or discontinuing service in pursuance of authority granted by the commission under the provisions of this section shall be deemed to have waived any and all

objections to the terms, conditions or requirements imposed by the commission in that regard....

4. The Commission relied on *Poland Tel.* to conclude that it lacked jurisdiction to resolve the territory dispute between Standish and Saco. In *Poland Tel.,* Pine Tree Telephone and Telegraph Company (Pine Tree), a telephone utility organized under the general laws of Maine and operating in parts of Gray, but not in the area in dispute, petitioned the Commission to prohibit Poland Telephone Company (Poland), a telephone utility created by a special act of the legislature and authorized to provide service in, among other areas, the Town of Gray, from providing telephone service within certain parts of Gray. Poland was in fact the only provider of telephone service within the disputed area. We upheld the Commission's refusal to issue a cease and desist order to Poland and concluded that the Commission had no jurisdiction to issue any cease and desist order to prohibit a utility created by a private and special act of the legislature from serving any area that the legislature authorized that utility to serve. *Poland Tel.,* 218 A.2d at 491.

Standish argues that *Poland Tel.* is not applicable because Poland was the sole provider of

■ It is well established that a valid judgment entered by a court, if not appealed from, generally becomes *res judicata* and is not subject to later collateral attack. *Harrington v. Inhabitants of Town of Garland*, 551 F.Supp. 1371, 1375 (D.Me. 1982), *aff'd*, 715 F.2d 1 (1st Cir.1983); *S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, 408 A.2d 676, 678–79 (Me.1979); *Thaxter v. Fry*, 222 A.2d 686, 691 (Me.1966). There is a strong policy in favor of ending litigation and giving finality to court judgments. *Hossler v. Barry*, 403 A.2d 762, 767 (Me. 1979). Balanced against that policy favoring finality is a requirement that a judgment, in order to become final, must be valid, and that a judgment rendered without subject matter jurisdiction is invalid and has no *res judicata* effect. *S.D. Warren Co. v. Maine Cent. R.R. Co.*, 126 Me. 23, 25, 135 A. 526 (1926). The more recent trend in the law is to favor finality over an absolute requirement of validity. *Northeast Bank N.A. v. Crochere*, 438 A.2d 266, 268 n. 7 (Me.1981). In *Crochere*, we precluded an attack not on direct appeal from an improper placement of a lien by the District Court on property not subject to attachment. *Id.* at 268. *See also Eich v. Gellerson*, 441 A.2d 315, 317–18 (Me.1982).

We have extended the principle of the *res judicata* effect of final judgments to adjudicative decisions of administrative bodies and have applied the *Restatement (Second) of Judgments* § 83 (1982). *Town of N. Berwick v. Jones*, 534 A.2d 667, 670–71 (Me.1987); *Maines v. Secretary of State*, 493 A.2d 326, 328–29 (Me.1985).

In this case, dealing with a fifty-year-old unappealed order of the Commission, entered at the request of these same parties to the proceeding before the Commission, we are persuaded that the rule set out in *Restatement (Second) of Judgments* § 12 (1982) should be applied to give *res judicata* effect to the issue of the Commission's

subject matter jurisdiction with respect to the 1938 order.

Section 12 provides:

**§ 12.  Contesting Subject Matter Jurisdiction**

When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Here, the 1938 order was issued by the Commission in its adjudicatory capacity, was not appealed and had the effect of a judgment.[5] Although the subsequent decision in *Poland Tel.* clarifies and limits the Commission's authority to prohibit a legislatively created utility from servicing areas legislation authorizes it to serve, the Commission's approval of the agreement limiting Saco's service area was not "so plainly beyond the [Commission's] jurisdiction that its entertaining the action was a manifest abuse of authority." *Restatement (Second) of Judgments*, at § 12(1). The agreement dealt with disputes between Standish and Saco pertaining to subjects that the Commission had authority to handle generally, *see*, R.S. ch. 62, § 54 (1930) (power to

utility service in the disputed area whereas in this case it is undisputed that both Standish and Saco had authority to and were providing services in the area subject to dispute. Without resolving the issue of the Commission's subject matter jurisdiction to issue the 1938 order, we conclude that the Commission's approval of the

order was not so plainly beyond its jurisdiction as to constitute a manifest abuse of authority and preclude the application of the *Restatement (Second) of Judgments* § 12 (1982).

5.  *See* R.S. ch. 62, § 63 (1930).

set rates and regulate service), § 56 (power to investigate), and in fact continues to consider on a regular basis. *See Central Maine Power Co. v. Maine Public Utilities Comm'n*, 395 A.2d 414, 428–30 (Me.1978) (discussing investigatory power of Commission). *See also* 35–A M.R.S.A. §§ 103, 104 (1988) (express and implied powers of Commission), §§ 112, 1303 (power to investigate), §§ 301–312 (power to set rates), §§ 701–712 (regulation and control of utilities), § 1306(2) (power to change conditions of service). The Commission did not act "so far outside of its authority as to affect the validity" of its order. *Fitanides v. Perry*, 537 A.2d 1139, 1141 (Me.1988).

Allowing the 1938 order to stand does not "substantially infringe the authority of another tribunal or agency of government." *Restatement (Second) of Judgments*, at § 12(2). No other tribunal or agency of government is at all affected by the *res judicata* effect of the order.

The 1938 order was issued by the Commission, which did not lack the "capability to make an adequate informed determination of a question covering its own jurisdiction." *Restatement (Second) of Judgments*, at § 12(3). Under that same section, Saco, having petitioned the Commission to exercise its jurisdiction in 1938, as a matter of procedural fairness, should not be allowed to attack the Commission's subject matter jurisdiction fifty years later in 1988.

We decline the Commission's invitation to interpret the 1938 order or to address the extent that the *res judicata* effect of the Commission's jurisdiction to issue the 1938 order allows the Commission continuing authority to interpret, enforce or modify that order. Those issues are beyond the scope of this appeal, were not addressed by all parties to this appeal and are better dealt with at the Commission level. *See Edwards v. Black*, 429 A.2d 1015, 1017 (Me. 1981).

The entry is:

Order of dismissal vacated. Remanded to the Public Utilities Commission for further proceedings consistent with the opinion herein.

WATHEN, HORNBY and COLLINS, JJ., concurring.

GLASSMAN, Justice, with whom ROBERTS, Justice, joins, concurring.

I agree with the Court that the judgment of the Public Utilities Commission (Commission) dismissing the petition of Standish Telephone Company (Standish) be vacated. In my opinion, however, the Commission acted clearly within its statutory authority when it issued its order dated December 8, 1938 approving the joint petition and agreement of Standish and Saco River Telegraph and Telephone Company (Saco).

In 1919 and 1933, respectively, the legislature enacted the predecessors to 35–A M.R.S.A. §§ 1101 and 1104 (1988), that provided in pertinent part:

Any public utility may henceforth sell, lease, assign, mortgage, or otherwise dispose of, or encumber the whole or any part of its property necessary or useful in the performance of its duties to the public, or any franchise or permit, or any right thereunder, or by any means whatsoever, direct or indirect, merge or consolidate its property, franchises, or permits, or any part thereof, with any other public utility, when, and not otherwise, *it shall have first secured from the commission an order authorizing it so to do. Every such sale, lease, assignment, mortgage, disposition, encumbrance, merger, or consolidation made other than in accordance with the order of the commission authorizing the same shall be void.*

P.L.1919, ch. 65, § 40, *amended by* P.L. 1935, ch. 30 (pertinent part unchanged) (emphasis added).

**Abandonment of property or service by public utilities.** No public utility as defined in this chapter shall abandon all or any part of its plant, property or system necessary or useful in the performance of its duties to the public, or discontinue the service which it is rendering to the public by the use of such facilities, without first securing the approval of the public utilities commission. In granting

its approval, the commission may impose such terms, conditions or requirements as in its judgment are necessary to protect the public interest. Any public utility abandoning all or any part of its plant, property, or system or discontinuing service in pursuance of authority granted by the commission under the provisions of this section shall be deemed to have waived any and all objections to the terms, conditions or requirements imposed by the commission in that regard. P.L.1933, ch. 155.

In the instant case, the documentary record discloses that on December 8, 1938 Standish and Saco filed a joint petition with the Commission seeking the Commission's approval of their agreement providing that each would discontinue certain telephone services in designated areas in which each had been authorized by law to provide such service. The agreement provided that Standish be allowed to sell and Saco to purchase "poles, cross-arms, glass insulators and open wires" that Standish owned within the area in which Standish proposed to discontinue telephone services. The agreement further explicitly recognized that it would not be effective as between the parties unless approved by the Commission.[1] By its order dated December 8, 1938, the Commission approved the joint petition.

In its final order dismissing Saco's petition to resolve disputes arising from the 1938 order, the Commission determined that it had not had subject matter jurisdiction to approve the parties' joint petition of 1938 because:

First, there is no reference in the 1938 petition or order to the predecessor of section 1104 [*see* R.S.1930, ch. 62, § 44–A]. Second, the parties and the Commission were all under the mistaken impression that the Commission could *unilaterally* order a utility to abandon its service territory and may have felt under some pressure to reach an agreement which was mutually beneficial.

(Emphasis added).

I would conclude that the Commission's findings are clear error because no authority is cited, and I know of none, that requires parties to reference the governing statute in a petition that is filed pursuant to and in compliance with the provisions of that statute. Further, there is absolutely nothing in the joint petition and agreement of the parties or in the order of the Commission approving the petition and agreement that indicates that the Commission acted unilaterally or that the parties and the Commission were under the mistaken impression that the Commission could act unilaterally or other than in conformance with and under the authority of sections 44 and 44–A. The Commission simply acted within its statutory authority in its order approving the discontinuance of service and sale of property set forth in the agreement between Standish and Saco.

Accordingly, although I concur with the Court that the judgment of the Commission be vacated, I would do so on the ground that the Commission erred as a matter of law in determining that in 1938 it was without jurisdiction to approve the joint petition and agreement of Standish and Saco.

---

**1.** In the joint petition the parties stated, *inter alia,*

Feeling that public convenience would best be served by the Saco River Telegraph and Telephone Company purchasing the facilities of the Standish Telephone Company in the Southern part of the Town of Buxton, below a line agreed upon and by the Standish Telephone Company agreeing not to attempt to render service in the portions of the town Southerly of said line, and the Saco River Telegraph and Telephone Company agreeing not to attempt to render service Northerly of said line, except as mentioned in an agreement this day executed, the parties have reached an agreement, which is made a part of this petition, which the petitioner asks this Commission to approve and by decree or order, authorize the Standish Telephone Company to sell and transfer to the Saco River Telegraph and Telephone Company, the property and rights mentioned in said agreement, for the sum of twenty-one hundred dollars ($2100.00) and by decree or order authorized the Saco River Telegraph and Telephone Company to purchase said property for the above mentioned sum, and to approve the terms and conditions of said contract.