**Bruce B. MAYBERRY**

v.

**TOWN OF OLD ORCHARD BEACH, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1991.
Decided Dec. 9, 1991.

James B. Maguire (orally), Portland, for appellant.

Christopher Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Bruce B. Mayberry appeals from a judgment of the Superior Court (Cumberland County, *Alexander, J.*) affirming the decision of the Old Orchard Beach Zoning

Board of Appeals denying his building permit. On appeal Mayberry argues that the Board applied an unduly restrictive definition of "use" when it found that the nonconforming use of the building he owned lapsed because it remained unoccupied for a period of two years. We find Mayberry's interpretation of the ordinance incorrect and affirm the Board's decision.

In September 1988, Mayberry's predecessors-in-title, Denley, Lindvall and Wood (Denley), bought a building at 27 Washington Street, Old Orchard Beach. Although the building did not comply with the requirements of the zoning ordinance, a prior owner had been issued a Certificate of Occupancy in September 1987 which permitted one retail store and three apartments in the building.[1] Denley applied for a variance to redevelop the lot by tearing down the existing structure and replacing it with a new building. The Board heard the variance request, but it was tabled pending proof of occupancy of the retail store or apartments within the last two years, as required by the ordinance. Denley failed to produce the requested information, and thus the Board denied the variance request. Denley did not appeal the Board's decision. Instead, the building was sold to Mayberry subject to a Repurchase Agreement.[2] Mayberry applied for a building permit to reconstruct the existing structure, which was denied by the Building Inspector. Mayberry filed an appeal with the Board that was again denied due to the failure to present any proof of occupancy. Mayberry sought review in the Superior Court pursuant to M.R.Civ.P. 80B. The court affirmed the Board's decision.

■ When the Superior Court acts as an intermediate appellate tribunal in reviewing the action of a Zoning Board, this court directly and independently examines the record developed before the Board. *Camden & Rockland Water Co. v. Town of Hope*, 543 A.2d 827, 829 (Me.1988). We review the Board's decision only to determine whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Sherwood v. Town of Kennebunkport*, 589 A.2d 453, 454 (Me. 1991) (citing *Grant's Farm Associates, Inc. v. Town of Kittery*, 554 A.2d 799, 801 (Me.1989)). The interpretation of provisions in a zoning ordinance is a question of law for the court. *Ray v. Town of Camden*, 533 A.2d 912, 914 (Me.1987).

■ "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as swiftly as justice will permit." *Farley v. Town of Lyman*, 557 A.2d 197, 201 (Me.1989) (quoting *Town of Windham v. Sprague*, 219 A.2d 548, 552–53 (Me. 1966)). Accordingly, "provisions of a zoning regulation for the continuation of [nonconforming] uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed." *Town of Windham v. Sprague*, 219 A.2d at 552.

■ Section 4.3.4.4 of the zoning ordinance states that "[i]f any such nonconforming use of a structure ceases for any reason for a period of more than two years, any subsequent use of such structure shall conform to the regulations specified by this Ordinance for the district in which such structure is located." Old Orchard Beach, Me., Rev. Ordinances § 4.3.4.4 (1990). The zoning ordinance defines "use" as "the purpose to which land or buildings or structure

---

1. The lot and the building are both nonconforming because they violate the following zoning ordinance requirements. First, the building is in the R–2 district which is designated a multi-family district where businesses are prohibited. Second, in district R–2 a building with three or more dwelling units is a conditional use to be permitted only if the lot contains 3,650 square feet for each unit and if there are two parking spaces for each unit. Finally, the ordinance establishes the minimum lot area in the R–2 district to be 10,000 square feet, minimum frontage of 100 feet, minimum front yard of twenty feet and a maximum percentage of lot coverage by all buildings of 30%.

2. Under the agreement Mayberry was required to apply for a building permit rather than a variance. If denied the building permit, Mayberry was obligated to appeal the denial to this court. Only if the nonconforming use is found to have lapsed is Denley required to repurchase the property.

[sic] part thereof is arranged, designed, intended, occupied, or maintained." *Id.* at § 3.2. In order to deny the building permit, Mayberry argues that the Board had to find that he failed to use the premises for two years in every way provided for in the definition of "use." Mayberry contends that four out of five of the criteria from the definition of "use" have not changed: the arrangement of the building, the design of the building, the intended use of the building and the maintenance of the building. In essence, Mayberry asserts that the building can continue as a nonconforming use indefinitely, so long as the physical design, arrangement, intended use or maintenance of the building have not been changed. Thus only if the character of the building changes should the building lose its grandfathered status.

Mayberry's interpretation of the ordinance cannot be reconciled with the policy of abolishing nonconforming uses "as swiftly as justice will permit." Mayberry's argument fails because it focuses on the physical character of the building, i.e. the design or arrangement, rather than its purpose. The ordinance obviously means that the cessation of the use of the building for its designed purpose for a period of two years will constitute a discontinuance of the nonconforming use. Provisions allowing the continuation of a nonconforming use are inserted in zoning ordinances to alleviate the unfairness of compelling immediate discontinuance of the use. Two years of nonuse, however, is a reasonable period of time beyond which to require the elimination of nonconforming uses.

The Board's interpretation of "use" in section 4.3.4.4 was rational. If a nonconforming use is perpetuated simply by virtue of the design or the arrangement of the structure, then section 4.3.4.4 is virtually ineffective as a termination provision. If section 4.3.4.4 is to serve any purpose, it must mean that a nonconforming use terminates when the actual employment of the premises for their intended purpose has come to a halt. Therefore, the Board properly determined that the nonconforming use of the building had lapsed.

The entry is:

Judgment affirmed.

All concurring.