### TOWN OF MADISON, DEPARTMENT OF ELECTRIC WORKS

v.

### PUBLIC UTILITIES COMMISSION, et al.

Supreme Judicial Court of Maine.

Argued Feb. 8, 1996.
Decided Sept. 6, 1996.

Gordon F. Grimes (orally), Janet E. Milley, Bernstein, Shur, Sawyer & Nelson, Portland, for Appellant.

Gerald M. Amero (orally), Pierce, Atwood, Portland, for CMP.

Peter G. Ballou, Gilbert W. Brewer (orally), Maine Public Utilities Commission, Augusta, John Lightbody, Murray, Plumb & Murray, Portland, for Telephone Assoc. of Maine.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Madison Electric Works, (MEW), a department of the Town of Madison, appeals from an order of the Public Utilities Commission (the Commission) requiring it to obtain Commission consent before extending its service to certain specified areas already serviced by Central Maine Power Company (CMP). MEW argues that the Commission's interpretation of 35–A M.R.S.A. § 2102(1), (2) (1988 & Supp.1995) is erroneous as a matter of law. We disagree and affirm the order of the Commission.

Initially, a brief review of the history of the relevant aspect of utility regulation in Maine may be helpful. Prior to 1895, the Maine Legislature chartered public utility companies by enacting private and special laws. Those laws served both to incorporate the public utility and specify the extent of its authority. The resulting utility companies are called "charter utilities," and their authorized service areas often consist of whole towns, or even whole counties. *See, e.g.*, P. & S.L.1887, ch. 8; P. & S.L.1901, ch. 322. In 1895, statutes were enacted to allow companies, already incorporated under the general laws of Maine, to provide utility services. These "general law utilities" could provide service in any city or town, so long as no other utility was servicing, or authorized to service, that town. If another utility was already servicing a particular town, the "general law utility" could not commence service unless it obtained the consent of the other utility or was authorized by a special act of the Legislature. P.L.1895, ch. 102. In 1901,

the law was changed to provide that consent could only be obtained from the Legislature. P.L.1901, ch. 273. In 1913, the Commission was created, and thereafter the consent of the Commission was required for a "general law utility" to invade another utility's authorized service area. P.L.1913, ch. 129, §§ 1, 27. A "charter utility," however, was not required to obtain any approval or consent in order to extend its service within its authorized area. Thus, if "charter utility A" was authorized to provide service to all of Cumberland County, but only serviced Portland, "general law utility B" would be required to obtain Commission approval before providing service to Westbrook. "Charter utility A," however, could thereafter extend its service to Westbrook without Commission approval even though "general law utility B" was the first to establish its service.

In 1966, we held in *Poland Telephone Company v. Pine Tree Tel. & Tel. Co.*, 218 A.2d 487 (Me.1966), that the consent requirement, codified at 35 M.R.S.A. § 2301 [1] did not apply to charter utilities. We observed that the law produced an uneven and disorderly system of utility regulation, and the Legislature responded in the very next legislative session by extending the consent requirement to charter utilities, while exempting only those that had already begun service in a municipality prior to October 8, 1967.[2] Except for a few stylistic changes, the 1967 law remains unchanged and is now codified

at 35-A M.R.S.A. § 2102(1), (2) (1988 & Supp.1995).

The facts of the present case may be briefly summarized as follows: Between 1887 and 1901, the Legislature created the Madison Village Corporation, MEW's predecessor, a charter utility. MEW was authorized to provide electricity to the towns of Anson, Starks, and part of Madison. P. & S.L.1887, ch. 8; P. & S.L.1901, ch. 11. In 1945, its authorized service area was expanded to include all of Madison. P. & S.L.1945, ch. 12. At all relevant times, MEW has serviced portions of these towns. In 1915, CMP's predecessor, a general law utility, commenced, with the consent of the Commission, service in a part of Anson not serviced by MEW. *See, In the Matter of Petition of the Carrabassett Light and Power Company*, Permission to Furnish Service in North Anson (Me.P.U.C. Feb. 17, 1915). Other CMP predecessors serviced portions of Madison and Starks.

In 1994, MEW sought to expand its actual service in the towns by offering service to customers within the territory serviced by CMP. Pursuant to 35-A M.R.S.A. § 1303 (1988), CMP requested the Commission investigate whether MEW can legally invade its territory, and whether MEW first needs Commission consent to do so. In 1995, the Commission issued its order, holding that (1) the consent requirement applies to all utilities, even those first authorized to serve a municipality, and (2) the grandfather clause

---

**1.** § 2301 appeared as follows in 1966:

> Corporations for ... [the purpose of supplying telephone, television, gas, or electricity to any town in the state] ... may be organized under [the general incorporation laws of Maine]. *No corporation so organized ... shall have authority, without the consent of the Public Utilities Commission, to furnish its service in or to any city or town in or to which another corporation, person or association is furnishing or is authorized to furnish a similar service....*

cited in *Poland Telephone* at 488 (emphasis added).

**2.** The relevant portions of the 1967 amendment are as follows:

> **Sec. 1. R.S., T. 35, § 2301, amended.** The 2nd sentence of section 2301 of Title 35 of the Revised Statutes is repealed and the following enacted in place thereof:
> *No corporation for either or any of such purposes, whether organized or authorized to*

*business under this section or by special Act of the Legislature,* **or any person or association, shall have authority, without the consent of the Public Utilities Commission, to furnish its service in to any city or town, in or to which another corporation, person or association is furnishing or is authorized to furnish similar service.**

> **Sec. 2. R.S., T. 35, § 2301, amended.** Section 2301 of Title 35 of the Revised Statutes, as amended by section I of chapter 348 of the public laws of 1965, is further amended by adding at the end of a new paragraph, to read as follows:
> **The 2nd sentence of the first paragraph shall not operate to divest any corporation, person or association of authority to furnish service in any city or town in which such corporation, person or association is furnishing services on the effective date of this Act.**
> Effective October 7, 1967

P.L.1967, ch. 280 (emphasis added).

only protects those areas actually served by a putative invader utility prior to 1967, and does not preserve that utility's right to invade, without consent, the entire municipality.[3] The Commission did not address whether MEW may legally invade CMP's area once consent is given, nor did it address whether consent would be given; rather, the decision only stated that consent would be required. From this order, MEW appeals.

■■■ This case turns solely on the Commission's interpretation of the 1967 amendment of the consent requirement. Accordingly, we review the Commission's decision for errors of law. *Community Telecommunications Corp. v. Loughran,* 651 A.2d 373, 376 (Me.1994); *International Paper Co. v. Board of Environmental Protection,* 629 A.2d 597, 599 (Me.1993). The Commission's interpretation of a statute administered by it, while not conclusive or binding on this court, will be given great deference and should be upheld unless the statute plainly compels a contrary result. *Abbott v. Commissioner of Inland Fisheries & Wildlife,* 623 A.2d 1273, 1275 (Me.1993).

■■■ When construing a statute, we must give effect to the Legislature's intent. *Pinkham v. Morrill,* 622 A.2d 90, 95 (Me. 1993). Intent is ordinarily gleaned from the plain language of the statute itself. Such plain meaning will be applied so long as it does not lead to an absurd, illogical, or inconsistent result. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994): *International Paper Co.,* 629 A.2d at 599–600, quoting *Mahaney v. State,* 610 A.2d 738, 741 (Me.1992).

■■■ All parties agree that the 1967 amendment eliminated the distinction between "charter utilities" and "general law

utilities," with respect to the consent requirement. MEW argues, however, that there was also a "first utility" versus "second utility" distinction, which was *not* eliminated: a "charter utility" created *prior* to the grant of power to a "general law utility" would *not* need the consent of the Commission to invade that utility's service area.

The Commission argues persuasively that the amendment, by its plain language, was designed to include *all* utilities, regardless of when and how they were created. The Commission argues that MEW's reading would frustrate the purpose of the amendment, which was to correct the anomaly first identified in *Poland Telephone.* We agree.

■ The language in section 2102(1) is unambiguous. The 1967 amendment makes no reference to "first" or "second" utilities. It requires *any* utility to obtain Commission consent before expanding its service into territory serviced by, or authorized to be serviced by, *any other* utility. The Legislature closed the gap we first noted in *Poland Telephone.* The Commission's interpretation is consistent with the plain language and remedial intent of the 1967 amendment. We are not persuaded that the statute plainly compels a contrary result.

All parties concede that the interpretation of subparagraph 2102(1) has a strong impact on the interpretation of the grandfather clause, subparagraph 2102(2), as the two provisions must be read in harmony with one another. If, as MEW contends, subparagraph (1) changed only one small facet of the utilities regulation landscape by requiring "second" charter utilities as well as "second" general law utilities to seek consent, and left untouched the rights of "first" charter utilities, then the grandfather clause should be

---

3. The full text of the consent statute, as currently written, is as follows:

§ 2102. **Approval to furnish service**

The following provisions apply to furnishing service.

1. **Approval required.** Except as provided in subsection 2 and in section 4507, no public utility may furnish any of the service set out in section 2101 in or to any municipality in or to which another public utility is furnishing or is authorized to furnish a similar service without the approval of the commission.

2. **Approval not required.** Except as provided in section 2104, the commission's approval is not required for a public utility to furnish service in any municipality in which that public utility is furnishing service on October 8, 1967. Approval is not required for the operation of a radio paging service or mobile telecommunications services. Approval is not required for an electric utility to sell and distribute electricity to any other electric utility. 35–A M.R.S.A. § 2102(1), (2) (1988 & Supp. 1995).

read as equally protective of pre-existing entitlements.

Although the grandfather clause is not free from ambiguity, we defer to the Commission. Not only is its interpretation reasonable, it is more harmonious with the plain language of subparagraph (1).

The entry is:

Order of the Public Utilities Commission affirmed.

ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ., concurring.

DANA, Justice, dissenting.

I respectfully dissent. The Court today interprets 35-A M.R.S.A. § 2102 (1988 & Supp.1995) to divest a charter utility of its authority to serve, without the prior consent of the Public Utilities Commission, the balance of a municipality that it was partially serving on October 8, 1967, notwithstanding the text of section 2 of the 1967 amendment, now codified in section 2102(2), which provides:

> [This provision] ... shall not operate to divest any corporation, person or association of authority to furnish service in any city or town in which such corporation, person or association is furnishing services on the effective date of this Act.

P.L.1967, ch. 279. Apparently, in the Court's view, section 2102(2) only absolves a utility from seeking the PUC's consent to continue to serve its October 8, 1967, customers. While serving an area that it was authorized to serve by the Legislature, why would a utility suspect that it might need the consent of the Legislature's agent to continue that service?

As the Court indicates, the 1967 amendment was enacted in response to our decision in *Poland Tel. Co. v. Pine Tree Tel. & Tel.*

Co., 218 A.2d 487 (Me.1966), in which we construed an antecedent to section 2102, 35 M.R.S.A. § 2301.[1] In *Poland* a general law utility was both authorized to operate in the Town of Gray, 218 A.2d at 487–88, and actually serving a portion thereof when the legislature created a charter utility with authority to serve all of Cumberland County. *Id.* Without seeking or obtaining the consent of the PUC, in 1927 the charter utility began serving a different area of Gray. *Id.* at 488. In 1966 the general law utility wanted to expand into that area of Gray and because the PUC had not previously given its consent to the charter utility's service, the general law utility sought to oust the charter utility from that area. *Id.* at 487.

We held that the consent requirement of section 2301 did not apply to charter utilities. *Id.* As a signal to the Legislature we observed that "a neat and orderly system of public utility regulation covering service of a second public utility in a [municipality] in which there is a public utility engaged in similar service or authorized therefor" should apply the consent requirement to charter utilities as well as general law utilities. *Id.* at 490.

The Legislature responded to our signal by enacting the 1967 amendment here at issue. By its terms the Legislature intended to eliminate the distinction between "charter" and "general law" utilities with respect to the consent requirement. From that time forth, if either a charter utility or a general law utility wanted to commence service in a municipality in which another utility was then providing service, the second utility would need the PUC's consent. By enacting the grandfather clause, however, the Legislature sought to preserve the expansion rights of charter utilities within a municipality in which it was then providing some service.

The PUC's interpretation, adopted by the Court, is inconsistent with the PUC's previ-

---

1. In 1966, 35 M.R.S.A. § 2301 stated in pertinent part:

   Corporations for the operation of ... telephones ... for the transmission of television signals ... and corporations for the purpose of making, generating, selling, distributing and supplying gas or electricity ... in any city or town ... within the State ... may be organized under [the general incorporation laws of Maine]. **No corporation so organized** ... shall

   have authority, without the consent of the Public Utilities Commission, to furnish its service in or to any city or town in or to which another corporation, person or association is furnishing or is authorized to furnish a similar service.

   *Poland Tel. Co. v. Pine Tree Tel. & Tel. Co.*, 218 A.2d 487, 488 (Me.1966) (citing 35 M.R.S.A. § 2301) (emphasis added).

ous construction of section 2102. *Saco River Tel. & Tel. Co.*, Re: Petition for Interpretation of Boundaries Agreement with Standish Telephone Company and Petition to Halt New Cable Construction by Standish Telephone Company, No. 86–156, Order on Reconsideration (Me. P.U.C. April 25, 1988), *vacated sub nom. on other grounds, Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478 (Me.1989).[2] In *Saco River* the Commission interpreted the consent requirement language as applying only to a "second" utility seeking to expand its service into a territory in which a "first" utility was already serving or was authorized to serve. *Id.* The Commission in *Saco River* explained that the 1967 amendment was "designed to affect only the rights of those companies over which *Poland Telephone* stated the Commission had no control, *i.e., second* companies with charter rights...." *Id.*

The Court's view is also inconsistent with 35–A M.R.S.A. § 2105 (1988). Section 2105 must be read together with section 2102. Section 2105 sets forth the procedure to be followed by a second utility when it seeks PUC consent, pursuant to section 2102(1), to serve an area in which another utility is already serving or is authorized to serve.[3] Section 2105 expressly refers to a "2nd public utility," and requires a public hearing on the necessity of a "2nd public utility" before consent may be granted under section 2102. The statute implicitly exempts any "1st utility" from the consent process requirement. Contrary to the Court's interpretation the 1967 amendment did not eliminate the distinction between the "first utility" and the "second."

The Court's interpretation is also inconsistent with the language of the 1967 amendment itself.[4] All concede that section 2102 incorporates the 1967 amendment "except for a few stylistic changes." The language of the 1967 amendment reveals the Legislature's intent that the consent requirement not operate "to divest" a utility of its "authority" to expand its service in any municipality in which it was then providing service.

I would vacate the order of the Commission.

2.  On appeal we vacated the Commission's order of dismissal of a petition regarding a territory dispute on the grounds that the issue of the Commission's jurisdiction was *res judicata*. *See Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478 (Me.1989).

3.  Title 35–A M.R.S.A. § 2105 (1988) states:
    **1. Approval only after hearing.** Except as provided in subsection 2, no approval required by section 2102, 2103 or 2104 and no license, permit or franchise may be granted to any person to operate, manage or control a public utility named in section 2101 in a municipality where there is in operation a public utility engaged in similar service or authorized to provide similar service, until the commission has made a declaration, after public hearing of all parties interested, that public convenience and necessity require a 2nd public utility.
    **2. Declaration without hearing.** The commission, may make a declaration without public hearing, if it appears that the utility serving or authorized to serve, the utility seeking approval from the commission provide service and any customer or customers to receive service agree that the utility seeking approval to serve should provide service.

4.  The pertinent provisions of the 1967 amendment state:

**Sec. 1. R.S., T. 35, § 2301, amended.** The 2nd sentence of section 2301 of Title 35 of the Revised Statutes is repealed and the following enacted in place thereof:
**No corporation for either or any of such purposes, whether organized or authorized to do business under this section or by special Act of the Legislature, or any person or association, shall have authority, without the consent of the Public Utilities Commission, to furnish its service in to any city or town, in or to which another corporation, person or association is furnishing or is authorized to furnish similar service.**
**Sec. 2. R.S., T. 35, § 2301, amended.** Section 2301 of Title 35 of the Revised Statutes, as amended by section I of chapter 348 of the public laws of 1965, is further amended by adding at the end of a new paragraph, to read as follows:
**The 2nd sentence of the first paragraph shall not operate to *divest* any corporation, person or association of *authority* to furnish service in any city or town in which such corporation, person or association is furnishing services on the effective date of this Act.**
Effective October 7, 1967
P.L.1967, ch. 279 (emphasis added).