2001 ME 81

**ROCKLAND PLAZA REALTY
CORPORATION**

v.

**CITY OF ROCKLAND et al.**

Supreme Judicial Court of Maine.

Argued: March 8, 2001.
Decided: May 11, 2001.

Catherine R. Connors, Esq., (orally), Matthew D. Manahan, Esq., Helen L. Edmonds, Esq., Ande A. Smith, Esq., Pierce Atwood, Portland, for plaintiff.

William V. Ferdinand, Esq., (orally), Glen L. Porter, Esq., Eaton Peabody Bradford & Veague, P.A., Augusta, (for Ellsworth Builders Supply), Gregg N. Dorr, Esq., City Attorney, Rockland, (for City of Rockland), for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Rockland Plaza Realty Corporation (Plaza Realty) appeals from a judgment entered in the Superior Court (Knox County, *Marsano, J.*) affirming the Rockland Zoning Board of Appeals' interpretation of four Rockland Zoning Ordinance provisions. Plaza Realty contends that the Board erred in interpreting Ordinance provisions regarding building coverage, building height, parking, and landscaping. We discern no error and affirm the judgment.

[¶ 2] Ellsworth Builders Supply, Inc.[1] owns and operates a retail building materi-

---

1. Although the City of Rockland, the Rockland Planning Commission, and Ellsworth Builders Supply are all named defendants or parties in interest, and participated in the Superior Court proceedings, only Ellsworth Builders Supply filed an appellee's brief and participated at oral argument in this Court.

als store on a parcel of land in Rockland's commercial zoning district. The lot contains several structures that are preexisting nonconforming uses with respect to setback, lot size, and street frontage requirements. Plaza Realty owns the abutting parcel and rents it out to commercial tenants.

[¶ 3] In November of 1999, Ellsworth Builders filed a site plan review application with the Rockland Planning Commission seeking to expand and renovate two of the nonconforming structures and remove other nonconforming structures on the lot, in addition to adding parking and landscaping. Plaza Realty opposed the plan, arguing that its approval would violate building coverage, building height, parking, and landscaping requirements. The Commission, however, concluded that Ellsworth Builders' plan conformed to all Rockland Zoning Ordinance requirements.

[¶ 4] The Commission then voted to table any further review of Ellsworth Builders' plan pending final approval because of Plaza Realty's indication that it would file an appeal to the Zoning Board of Appeals challenging the Commission's construction of the Zoning Ordinance.[2] Plaza Realty did file an appeal to the Rockland Zoning Board of Appeals on December 20, 1999. The Board upheld the Commission's interpretation of the contested provisions.

[¶ 5] Pursuant to M.R. Civ. P. 80B, Plaza Realty filed a complaint in the Superior Court naming the City of Rockland, the Planning Commission, and Ellsworth Builders as defendants, and challenging the Board's interpretations of the Zoning Ordinance provisions at issue. The court affirmed the Board's interpretations of the Zoning Ordinance and remanded the case "to the Planning Commission *to issue an expansion permit.*" (Emphasis added). This appeal by Plaza Realty followed.

I.

[¶ 6] We first address whether this case is ripe for decision. Generally, final action by an administrative body is required before a party can appeal that action. *See, e.g., Lakes Envtl. Ass'n v. Town of Naples,* 486 A.2d 91, 95–96 (Me. 1984). Pursuant to Rockland's Site Plan Review Ordinance, however, the Board is permitted to hear appeals regarding the Commission's interpretation of ordinance provisions *prior* to the final approval of a plan, *see supra* note 2. Plaza Realty did take such an appeal to the Board. Following the decision of the Board, Plaza Realty appealed the Board's interpretation of the Zoning Ordinance to the Superior Court without waiting for a remand from the Board to the Commission for final approval of the site plan and issuance of the expansion permit. Moreover, the *only* issue that Plaza Realty has raised is the Board's construction of four Zoning Ordinance provisions. We have in the past permitted parties to appeal an agency's interpretation of a statute as a matter of

---

2. The Site Plan Review Ordinance provides for the tabling of an application pending appeal as well as the Board's authority to hear appeals regarding the interpretation of Zoning Ordinance provisions in the absence of final approval of a plan:

Nor shall the Zoning Board of Appeals schedule or hear any appeal in connection with such a project where the Planning Commission has not taken final action on the application *unless the appeal is an ap-* *peal of the Commission's interpretation of the Zoning Ordinance or Site Plan Review Ordinance* .... If an interpretation or variance appeal is filed with the Board prior to the granting of final approval of the application by the Commission, the Commission shall table *final action on the application* pending the Board's decision ....

Rockland, Me., Site Plan Review Ordinance § 16–201 (Mar. 6, 2000) (emphasis added).

law prior to a final agency action. *See Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595–96 (Me.1986). Furthermore, all the substantive decisions on which final approval of the site plan would be based have already been made and all that remains for the Planning Commission to do is the ministerial act of issuing an order of final approval of the plan.[3] Indeed, the judgment entered by the Superior Court is a final judgment, and mandates remand to the Planning Commission "to issue an expansion permit." Therefore, although this appeal by Plaza Realty to the Superior Court is not from the Commission's *final* approval of the plan, as would generally be required, we nevertheless agree to take and decide Plaza Realty's appeal as a matter of law in the interest of judicial economy and to prevent further delay because all that remains before the Planning Commission is the ministerial act of final approval.

## II.

■ [¶ 7] Plaza Realty contends that the Board misinterpreted four provisions of the Rockland Zoning Ordinance by determining that the provisions permit the expansion of nonconformity on Ellsworth Builders' property. Plaza Realty argues that the four Rockland Zoning Ordinance provisions regarding building coverage, building height, parking, and landscaping are ambiguous, and must therefore be interpreted to reduce nonconformity rather than to permit its perpetuation or expansion. When, as here, the Superior Court acts in its intermediate appellate capacity, we review directly the decision of the Zoning Board of Appeals for abuse of discretion, errors of law, or findings not sup-

ported by substantial evidence in the record. *Mayberry v. Town of Old Orchard Beach*, 599 A.2d 1153, 1154 (Me.1991). The interpretation of an ordinance is a matter of law that we review de novo. *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 8, 755 A.2d 485, 487.

### A. Building Coverage

■ [¶ 8] The Zoning Ordinance provides:

> A non-conforming structure may be added to or expanded after obtaining a permit ... with the following conditions; ... The building coverage within each setback area (i.e. front, side, rear) may be increased by no more than 30% during the lifetime of the structure.

Rockland, Me., Zoning Ordinance § 19–308(3)(A)(2) (Mar. 6, 2000). Plaza Realty contends that the language of this section prohibits any building expansion that increases building coverage by more than thirty percent of the *original size of the building being renovated.* Specifically, Plaza Realty notes that the reference to "the lifetime of the structure" indicates an intent to limit a building coverage analysis to one specific building. We disagree.

[¶ 9] The Board concluded that this provision prohibits building expansion that increases building coverage by more than thirty percent of the *total area of all the structures in the setback area.* The reference to "the lifetime of the structure" serves only to show that building coverage limitations are cumulative over the life of the expanded structure(s) and not a limit on each expansion. If read otherwise, the provision would allow a thirty percent expansion multiple times and render the lim-

---

**3.** At oral argument, Ellsworth Builders asserted that the Commission had already made all decisions on which final approval would be based, characterized the Commission's final approval of Ellsworth Builders' plan as a "ministerial act," and waived the issue of ripeness, seeking a final decision on the merits.

itation a nullity. We agree with the Board.

■ [¶ 10] By its plain language, this provision refers to building coverage within the entire setback area rather than the building coverage of one particular building, and therefore, the thirty percent increase should be measured in comparison to all the buildings in the setback area rather than one particular building within that area. Thus, according to the language of this provision, the thirty percent figure can take into account the decrease in building coverage from buildings being *removed* from the setback area, and therefore allows developers some flexibility in complying with the provision. "[T]he lifetime of the structure" language merely provides a time frame against which to measure the expansion. In addition, the Zoning Ordinance itself defines "building coverage" as "[t]he horizontal area measured at the outside of the exterior walls of all principal and accessory buildings on a lot." Rockland, Me., Zoning Ordinance § 19–302 (Mar. 6, 2000). When a statute specifically defines a term, we cannot redefine it. *Musk v. Nelson,* 647 A.2d 1198, 1201 (Me.1994). Accordingly, the Board did not err in concluding that expansion is permitted unless it increases building coverage by more than thirty percent of all the buildings in the entire setback area.

## B. Building Height

■ [¶ 11] The Zoning Ordinance also provides:

A non-conforming structure may be added to or expanded after obtaining a permit ... with the following conditions: ... The height of any part of the addition or expansion that extends into the setback area shall not exceed the height of the encroaching part of the existing structure nor the height allowed in the zoning district, whichever is less.

Rockland, Me., Rockland Zoning Ordinance § 19–308(3)(A)(3) (Mar. 6, 2000). Building height is defined as, "the vertical distance from the mean elevation of the original grade or existing street level, whichever is higher, around the perimeter of the building to the highest point of a flat roof .... Height limitations shall not apply to chimneys, steeples, water standpipes or spires ...." Rockland, Me., Zoning Ordinance § 19–302 (Mar. 6, 2000). The plan of Ellsworth Builders provides for the construction of a cupola on a building inside the setback area which, if its height were included as part of the height of the building, would violate the building height Ordinance by increasing the height of the renovated structure above that of the existing structure. Plaza Realty contends that the Board erred in concluding that because the "cupola does not add functional space and is similar to a chimney," its measurement is not included in the calculation of building height.

■ [¶ 12] Statutory language should be given its plain and ordinary meaning. *Mullen v. Liberty Mut. Ins. Co.,* 589 A.2d 1275, 1277 (Me.1991). We have often relied on dictionaries to determine such meanings. Furthermore, statutory language should be interpreted to avoid absurd, illogical, or inconsistent results. *Town of Madison, Dep't of Elec. Works v. Pub. Utils. Comm'n,* 682 A.2d 231, 234 (Me.1996). "Cupola" is defined as "[a] domed roof or ceiling" or "[a] small, usually domed structure surmounting a roof." THE AMERICAN HERITAGE DICTIONARY 349 (2d ed.1982). Similarly, "chimney" is defined as "[a] passage through which smoke and gases escape from a fire or furnace" or "[t]he part of such a structure that rises above a roof." THE AMERICAN HERITAGE DICTIONARY 266 (2d ed.1982). The two structures are similar in definition, purpose, and appearance. Although the

Ordinance specifically recites a list of structures that are excluded from the calculation of building height, and a cupola is not included in that list, to vacate the Board's conclusion on this basis would be an overtechnical interpretation of the Ordinance and would disregard the intent and the spirit of the Zoning Ordinance to exclude from height restrictions those structures which are largely ornamental. If chimneys were excluded from building height calculation but the similar cupolas were held to be included, the result would be absurd, illogical, and inconsistent. Thus, the Board's determination that a cupola is similar to a chimney and is therefore excluded from the measurement of building height is not error.

## C. Parking

[¶ 13] The Zoning Ordinance provides, "Sufficient space shall be provided at each retail store or shopping center to provide at least three (3) square feet of off-street parking space for each one (1) square foot of floor area." Rockland, Me., Zoning Ordinance § 19–307(6) (Mar. 6, 2000). The Ordinance further states, however, "Nothing in the foregoing paragraphs of this Section shall be construed as requiring compliance by non-conforming owners with situations which existed prior to the effective date of this Section, July 1, 1974." Rockland, Me., Zoning Ordinance § 19–307(10) (Mar. 6, 2000).

[¶ 14] Plaza Realty contends that: (1) although Ellsworth Builders' plan provides for more parking, the amount of that parking is nevertheless insufficient, and (2) because the parking "situation" on Ellsworth Builders' lot is changing with the renovations, this new situation is no longer exempt from Ordinance parking requirements. We disagree. The present status of Ellsworth Builders' parking existed prior to the effective date of the parking ordinance provision, July 1, 1974, and it is therefore an existing "situation" within the meaning of section 19–307(10) of the Ordinance. The Board committed no error in concluding that the Zoning Ordinance exempts Ellsworth Builders' plan from its parking requirements.

## D. Landscaping

[¶ 15] The Zoning Ordinance provides, in part, "In addition to required perimeter landscaping, at least five (5) percent of the gross area of all parking lots with twelve (12) or more parking spaces shall be landscaped. Existing parking lots shall be exempt from this requirement although landscaping should be provided to the greatest extent possible." Rockland, Me., Zoning Ordinance § 19–316(G)(10)(a)(i) (Mar. 6, 2000). The Ordinance further recommends that such landscaping include at least two canopy trees, one understory tree, and five shrubs for every twelve parking spaces. Rockland, Me., Zoning Ordinance § 19–316(G)(10)(a)(ii) (Mar. 6, 2000). The Board determined that Ellsworth Builders was exempt from these provisions because its lot was an existing lot.

[¶ 16] Plaza Realty contends that Ellsworth Builders' plan does not satisfy these provisions and that the Board erroneously exempted it from the requirements by characterizing the lot as an existing lot. Again, we disagree. First, the provision regarding the types of landscaping that should be installed is merely a recommendation rather than a mandatory requirement. Moreover, the plain language of the landscaping provision states its inapplicability to existing lots. We have already determined that Ellsworth Builders' lot was previously existing and it is therefore exempt from these requirements. Furthermore, Ellsworth Builders' plan does propose to add landscaping, thus bringing

its parking area *more* in compliance with the provisions of the Ordinance. The Board did not erroneously determine that Ellsworth Builders' lot was exempt from landscaping requirements.

[¶ 17] Finally, Plaza Realty contends that all of the foregoing provisions are ambiguous, and that ambiguous provisions must be interpreted to reduce nonconforming uses rather than perpetuate or expand them. The Zoning Ordinance does provide: "In no case shall a structure be reconstructed or replaced so as to increase its nonconformity." Rockland, Me., Rockland Zoning Ordinance § 19–308(3)(C)(1) (Mar. 6, 2000). We have said: "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as swiftly as justice will permit." *Mayberry*, 599 A.2d at 1154 (quoting *Farley v. Town of Lyman*, 557 A.2d 197, 201 (Me.1989)).

[¶ 18] Although zoning provisions permitting continued nonconformity, such as Rockland's Zoning Ordinance, should generally be strictly construed, *Mayberry*, 599 A.2d at 1154, our task in construing statutes and ordinances, including zoning ordinances, is nevertheless to discern the intent of the legislative bodies that enact them. *Town of Madison, Dep't of Elec. Works*, 682 A.2d at 234. The Board's interpretations of the Zoning Ordinance are reasonable and supported by the plain language of the four provisions at issue here, which in turn reflect the intent of those who enacted the Ordinance. These renovations and expansions actually *reduce* the nonconformity of Ellsworth Builders' parcel rather than increase it. Although the drafters of the Rockland Zoning Ordinance intended that nonconformities be reduced, it is also clear that even the strictest interpretation of the Ordinance does not require their immediate and complete elimination in contravention of its plain language, which provides for numerous exemptions and exclusions. The Board committed no error in interpreting the Rockland Zoning Ordinance provisions regarding building coverage, building height, parking, and landscaping.

The entry is:

Judgment affirmed.

ALEXANDER, J., with whom SAUFLEY and CALKINS, JJ., join, dissenting.

[¶ 19] I respectfully dissent. This Court's opinion and the Superior Court's opinion interpreting the Rockland Zoning Ordinance violate both the final judgment rule and our constitutional separation of powers. In each instance, a court has provided what is, in essence, an advisory ruling invading the primary jurisdiction of a local planning board before that board has issued or denied any permit in a final administrative action.

[¶ 20] In this case, the Rockland Planning Commission has never issued a final approval (or denial) of the Ellsworth Builders Supply site plan review application. Instead, the Commission tabled both further review and any final approval of the application because Plaza Realty filed an interlocutory appeal, allowed by the Rockland Zoning Ordinance, with the Rockland Zoning Board of Appeals. The Rockland Zoning Board of Appeals decided against Plaza Realty's challenge to certain findings and conclusions made by the Planning Commission during their consideration of the Ellsworth Builders Supply application. Plaza Realty then appealed to the Superior Court the interpretations on their interlocutory appeal offered by the Rockland Zoning Board of Appeals.[4]

4. The Superior Court characterized the action as an appeal from an "interpretation of the

[¶ 21] On appeal to the Superior Court, Ellsworth Builders Supply objected that the case was not in an appropriate posture for decision on the merits. However, the Superior Court reached the merits, upheld the Zoning Board's interpretations, and remanded for issuance of the permit, although issuance of the permit would be a matter within the primary jurisdiction of the Planning Commission which had not yet reached that issue.

[¶ 22] We recently discussed why the final judgment rule is important to: (i) prevent piecemeal litigation; (ii) curtail interruption, delay, duplication and harassment; (iii) minimize interference with the decision-maker below; (iv) serve the goal of judicial economy; and (v) save the appellate court from deciding issues which may ultimately be mooted or otherwise avoid appeal altogether. *See Millett v. Atl. Richfield Co.*, 2000 ME 178, ¶ 8, 760 A.2d 250, 253.

[¶ 23] The history of this case amply demonstrates the prudence of the final judgment rule. The interlocutory appeals, authorized by the Rockland Ordinance, have already resulted in a year and a half delay in consideration of the Ellsworth Builders Supply application, without any final determination on that application having been issued by the Rockland Planning Commission, the agency originally charged to hear and decide the merits of the application.

[¶ 24] Just four months ago in *Herrle v. Town of Waterboro*, 2001 ME 1, 763 A.2d 1159, we dismissed an appeal from a zoning board of appeal's interpretation of a local ordinance offered to inform a local enforcement decision. *Id.* ¶ 12, 763 A.2d

at 1162. We reasoned that the decision to enforce or not to enforce based on the zoning board's interpretation remained a matter of discretion with the enforcement authorities. *Id.* ¶¶ 9–11, 763 A.2d at 1161–62. Although an appeal was authorized by the local ordinance, we concluded that the Superior Court and this Court were essentially being asked to render an advisory opinion, and we dismissed the appeal. *Id.* ¶ 12, 763 A.2d at 1162. *See also Pepperman v. Town of Rangeley*, 659 A.2d 280, 282–83 (Me.1995).

[¶ 25] We have long held that, absent special and narrow exceptions, we only consider appeals from final decisions or judgments. We have defined a final judgment as a judicial or administrative action which "fully decides and disposes of the whole cause leaving no further questions for the future consideration and judgment of the Court . . . ." *Hazzard v. Westview Golf Club, Inc.*, 217 A.2d 217, 222 (Me. 1966); *accord Musson v. Godley*, 1999 ME 193, ¶ 5, 742 A.2d 479, 481. *See also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); MOORE'S FEDERAL PRACTICE § 202.2 (3d ed.2000); Field, McKusick & Wroth, *Maine Civil Practice* § 73.1 (1970). The final judgment rule is equally applicable to appeals from administrative decisions. *See Herrle*, 2001 ME 1, ¶ 9, 763 A.2d at 1161; *Mechanic Falls Water Co. v. Pub. Utils. Comm'n*, 381 A.2d 1080, 1087 (Me.1977); *Sawin v. Town of Winslow*, 253 A.2d 694, 698 (Me.1969).

[¶ 26] In *Mechanic Falls Water Co.*,[5] we determined that findings of fact and conclusions of law reached by the Public Utili-

---

Rockland Zoning Ordinance and Site Plan Review Ordinance resulting in tentative approval of Ellsworth Builders Supply, Inc.'s expansion application."

5. In *Mechanic Falls*, the finality issue was addressed in the context of determining when a time for appeal begins to run.

ties Commission, prior to issuance of a final decision, were not final judgments because, although the Commission's determinations may have indicated what the Commission would do with respect to the pending proceeding, the rulings were not sufficient to transform the factual and legal conclusions into a final judgment. *Mechanic Falls Water Co.*, 381 A.2d at 1087.

[¶ 27] No local decision-making process can be considered over until it is over. Planning Boards, like other decision-making bodies, are subject to change of mind and change of membership which can sometimes lead to change of result between preliminary and final decision-making. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶¶ 8–11, 760 A.2d 257, 259–60 (noting a town's change of position in the course of consideration of a land use application).

[¶ 28] Plaza Realty may not have liked the drift of the preliminary determinations in the Planning Commission's review, but the drift of those determinations is not ripe for our review. Courts decline to intervene in the actions of an administrative agency "unless the action has achieved, through the administrative tribunal, the stage at which it is ripe for judicial consideration." *LeVesque v. Town of Eliot*, 448 A.2d 876, 878 (Me.1982). Until there is final Planning Commission approval, Plaza Realty has not been harmed "in a concrete way" necessary to create a case or controversy for decision on the merits of an appeal. *Reno v. Catholic Soc. Servs. Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890–92, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

[¶ 29] The final judgment rule is intended to support our goal of securing "the just, speedy and inexpensive determination of every action." M.R. Civ. P. 1. It prevents piecemeal review that is prospective rather than final with the unnecessary cost, delay, and disruption of administrative or judicial proceedings inherent in such interlocutory or preliminary reviews. The City of Rockland can adopt a zoning ordinance allowing interlocutory and piecemeal reviews of decisions and delays of a final result as a matter of local policy, but a local ordinance cannot impose on the courts an obligation to undertake interlocutory reviews of local agency decisionmaking.

[¶ 30] As noted, the Planning Commission has never issued a final decision on this application. Now, a year and a half later, it may change its opinion regarding some of the findings or conclusions it suggested in its 1999 proceedings. Thus, any interpretation of law preceding its final order is essentially advisory. It could be issued by the city's corporate counsel and with equal, preliminary effect.

[¶ 31] An advisory opinion tells a local board, prospectively, what they should do or how they should act. Depending on many factors, it may or may not be implicated in the final agency decision. An opinion on a final administrative action, by comparison, decides retrospectively whether the board acted legally or not. Retrospective review—the judicial function—is very different from prospective advice. Providing legal advice is an executive function. Laws or ordinances involving the judiciary in advising state or local agencies what actions they should or might take would be violative of the separation of powers language of Article III of the Maine Constitution.

[¶ 32] Courts can issue advisory opinions only where authorized by a special constitutional process pursuant to Article VI,

section 3 of the Maine Constitution.[6] Under that provision, on rare "solemn occasions," the Governor or the Legislature may ask this Court for advisory opinions. No local ordinance or state statute can provide a similar authorization.

[¶ 33] Two decades ago, the late Justice Harry Glassman, one of Maine's most respected judges in the last half of the twentieth century, observed that any statute authorizing the courts to issue advisory opinions "would pose serious constitutional problems since it would purport to authorize the Superior Court to render advisory rulings on hypothetical controversies." *Bar Harbor Banking & Trust Co. v. Alexander,* 411 A.2d 74, 78 (Me.1980). In discussing the issue, Justice Glassman emphasized that: "We repeat that aside from opinions properly rendered on solemn occasions, *see* ME. CONST. Art. VI, § 3, the judiciary has no power to issue advisory rulings and the legislature cannot authorize the judicial department to pass on hypothetical questions." *Id.* (citations omitted.) *See also* MOORE'S FEDERAL PRACTICE § 205.02[1] (3d ed.2000) (noting that the case or controversy rule is a separation of powers issue intended to limit the judiciary's power of adjudication to actual cases and controversies).

[¶ 34] Six years after Justice Glassman's carefully considered and well-reasoned opinion, and without citing *Bar Harbor Banking & Trust* or discussing the separation of powers based prohibition on issuing advisory opinions, this Court indicated that, on some occasions, we could issue advisory opinions second guessing agency interpretations. *See Annable v. Bd. of Envtl. Prot.,* 507 A.2d 592, 596 (Me.1986). That opinion may be considered an aberration because it addressed neither the separation of powers issue nor the constitutional limitation restricting advisory opinions to those specially requested on "solemn" occasions. However, in light of those important constitutional doctrines limiting the judiciary's power to advise the state or local governments, prospectively, on actions they may take, *Annable* should be distinguished or overruled.

[¶ 35] The Court's rendering advice to local governments, by providing interpretations of law before any permit has been issued from which an appeal can be taken, is an inappropriate interference by the judiciary in the affairs of local government prohibited by Article III of the Maine Constitution. Such advisory opinion-making wastes resources of the judiciary and the litigants by promoting preliminary appeals that increase cost and delay and by inviting rulings that may have no effect due to alternatives for final resolution of the local administrative action that are not controlled by whatever opinion the judiciary may issue.

[¶ 36] The Superior Court's order to issue the permit, although the application had never been finally considered by the Planning Commission, also violated the doctrine of primary jurisdiction. The doctrine of primary jurisdiction is a discretionary doctrine to avoid judicial interference with the functions of an administrative agency by allowing the agency to make the initial determination on a matter within its statutory authority, subject to later judicial review. *See Cushing v. Smith,* 457 A.2d 816, 821–22 (Me.1983); *Levesque,* 448 A.2d at 878; *Fletcher v. Feeney,* 400 A.2d 1084, 1090 (Me.1979);

---

**6.** Article VI, section 3 of the Maine Constitution states: "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives."

*State ex rel. Brennan v. R.D. Realty Corp.*, 349 A.2d 201, 207 (Me.1975).

[¶ 37] Because the Superior Court ordered the Planning Commission to issue the permit, even though Plaza Realty's interlocutory appeal prevented the Planning Commission from ever reaching the point in their decision-making process where they would consider issuing or denying the permit, and because this is a matter within the primary jurisdiction of the Rockland Planning Commission, not the Court, I would vacate the decision of the Superior Court and remand to the Superior Court with direction to dismiss the appeal. There is no final administrative decision ripe for judicial review.