STATE OF MAINE                                     SUPERIOR COURT
CUMBERLAND, ss.                                    CIVIL ACTION
                                                   DOCKET NO: AP-07-56

JEFFREY H. LEIGHTON and
LYNNE F. LEIGHTON

                    Plaintiffs
                                        **ORDER**
        v.

THE TOWN OF FALMOUTH, MAINE
and THE TOWN OF FALMOUTH
BOARD OF ZONING APPEALS, and
ALBERT W. FARRIS, JR.



                    Defendants

        This matter comes before the Court on Jeffrey and Lynne Leighton's

appeal pursuant to M.R. Civ. P. 80B of a decision of the Falmouth Zoning Board

of Appeals.

               FACTUAL AND PROCEDURAL BACKGROUND

        The issue in this case concerns certain property owned by Plaintiffs Jeffrey

H. and Lynne F. Leighton (Leightons) located at 71 Underwood Road in

Falmouth, Maine (Property). The facts of this case are largely undisputed. The

Leightons purchased the Property in 1972 by warranty deed.[1] The deed

describes the Property as containing "Lots numbered 58, 60, 62 and 64." The

Leightons' residence and garage are situated on Lots 58 and 60.

        In June 2007, the Leightons sought approval from Defendant Town of

Falmouth (Town) to merge lots 62 and 64 pursuant to Falmouth's Zoning and

---

[1] The Deed described the Property as:

> A certain lot or parcel of land with the buildings thereon, situated on the
> northeasterly side of Underwood Road in the Town of Falmouth, County of
> Cumberland and State of Maine, being Lots numbered 58, 60, 62 and 64 as
> shown on Plan of Underwood Extension, . . . .

Site Plan Review Ordinance (Ordinance) Section 6.8 in order to create one buildable lot from the two "vacant" lots.[2] That request was denied by Albert W. Farris, the Town's Code Enforcement Officer (CEO), by opinion letter dated July 31, 2007. The CEO determined that the Property was one lot based on the language of the Deed conveying "[a] certain lot" coupled with both the designation of the Property on the 1964 Town Tax Maps as an individual lot and the language in Sections 4.1 and 6.1 of the Ordinance regulating structure and lot conformity.[3]

The Leightons timely appealed the CEO's decision to the Town's Zoning Board of Appeals (Board). On October 23, 2007 the Board held a hearing on the Leighton appeal, at which time, the Leightons testified. The Board denied the

---

[2] Ordinance § 6.8 states:

> Two or more nonconforming vacant adjoining lots in common ownership shall be consolidated to form one or more lots conforming so far as possible to the lot area and width requirements of this Ordinance. If possible, the lots shall be consolidated so that no nonconforming lot or lots are formed. The lot or lots so formed may be built upon as a matter of right, subject to the lot coverage and setback requirements of this Ordinance for the district where located, provided that the owner can demonstrate that there is reasonable access to the site by emergency vehicle.

[3] The subject sections of the Ordinance are as follows:

**SECTION 4. GENERAL PROVISIONS**

The following general provisions shall apply to all districts:

4.1 No structures that require a building permit shall be erected or used, and no lot shall be used or divided, unless in conformity with provisions of this Ordinance. All structures and lots, and uses of structures and lots, which fail to conform to the provisions of this Ordinance are prohibited, except as provided herein. [Amended, 2/28/05]

**SECTION 6. NONCONFORMING STRUCTURES, USES AND LOTS**

6.1 A nonconforming structure, use, or lot is permitted to continue as it existed prior to the date such structure, use or lot became non-conforming under the provisions of this Ordinance, as amended.

appeal by a vote of 3 to 1. There were no findings of fact or conclusions of law in the record upon which the Board based its vote. The Leightons appealed this decision.

On March 21, 2008, a hearing was held in Cumberland County Superior Court. Following this hearing, the Court issued an order remanding the matter to the Board so that the Board could inform the Court of the basis for its decision in denying the Leightons' appeal. In its order, the Court specifically recognized that the

> Town argues that 1) the four individual undersized lots 'lost their separate character through the deed description in 1963 – before the Leightons even acquired title to the property; and/or 2) that the separate character of the lots was lost through the Leightons', and their predecessors in interest's, treatment of the property.

The Court identified the Town's first argument as a question of law, and its second argument as a question of fact. The Court went on to assert that if the basis of the Board's decision be the question of fact, it must find sufficient evidence in the record to support such a decision.

On May 28, 2008, the Board adopted certain findings of facts and conclusions of law. Specifically, the Board found that (1) in 1974, when the Leightons obtained a building permit to construct a foundation for their home's porch, the permit itself, signed by Mr. Leighton, described the Property size as 16,000 square feet, the size of all four lots combined; (2) since purchasing the Property in 1972, the Leightons have paid a single tax bill showing one lot with structures; and (3), that the "Leightons have mowed the small area covered by grass on Lots 62 and 64 (the vacant lots). Most of the property consists of moss and ledge." From the findings of how the Leightons treated the Property, the

Board concluded that Lots 58/60 and Lots 62/64 have lost their separate character and have merged into one lot.

Alternatively, the Board came to the conclusion that the Property lost its separate character through the deed description of the land. The Board came to this conclusion based on the fact that, while at one time the four lots were under the same ownership, prior to 1963, the separately number lots had been conveyed via separate deeds, and since 1963, each deed used to convey the Property describes it as

> A certain lot or parcel of land, with buildings thereon, situated on the northeasterly side of Underwood Road . . . being lots numbered 58, 60, 62, and 64 as shown on Plan of Underwood Extension . . . to which plan references is made for more particular description.

From this deed language, the Board concluded that each separately numbered lot lost its separate character and merged into one lot.

The Leightons appeal this decision.

## STANDARD OF REVIEW

It is well settled that "when a Superior Courts acts as an appellate court [for administrative decisions], we review directly the operative decision of the municipality." *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161, 163-64. The Court reviews a local board's decision for error of law, abuse of discretion, or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). To prevail, plaintiff must show "not only that the Board's findings are unsupported by record evidence, but also that the record compels contrary findings." *Total Quality v. Town of*

*Scarborough*, 588 A.2d 283, 284 (Me. 1991). Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Twigg*, 662 A.2d at 916. The interpretation of an ordinance, however, is a question of law that is reviewed *de novo*. *Kurlanski v. Portland Yacht Club*, 2001 ME 147, ¶ 9, 782 A.3d 783, 786 (*citing Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 7, 772 A.2d 256, 259); *see also Isis Development, LLC v. Town of Wells*, 2003 ME 149, n. 4, 836 A.2d 1285, 1287.

DISCUSSION

I.     Loss of Character Though Use

The Board found that the lots had lost their separate character through the Leightons' treatment of the property as a single lot. Specifically, the Board found it persuasive that the Leightons paid taxes under only one lot since they purchased the land, a building permit signed by Mr. Leighton described the Property as only one lot, and finally, the Leightons failed to object to the assessor's map that showed the Property as one lot.

The Leightons argue that, as the Town prepares tax bills, assessor maps, and building permits, coupled with the fact that they should not be expected to have "visionary insight into the legal implications" of their failure to correct the Town's alleged mischaracterization of the Property, the Board's decision that the lots lost their separate character through the Leightons' use is not supported by substantial evidence. The Court disagrees.

While the evidence *could* support a contrary conclusion, the references to the property as one unified lot in the tax bill, assessors map, and building permit, coupled with the fact that the Leightons never sought to correct these alleged mischaracterizations during their 35-year ownership of the property, would

5

allow a reasonable mind to conclude that the Leightons' treatment of the lots caused them to lose their separate character. As such, the Leightons have not met the burden of showing that the evidence compels a different result, and therefore, the Board's conclusion regarding loss of character through use should not be disturbed.

II.    History of the Property As It Relates to Relevant Deeds and Ordinances

In the alternative, the Town also concluded that Lots 58/60 and Lots 62/64 merged into one lot due to the 1963 deed description of the Property as a "certain lot or parcel of land."

The Maine Law Court has held that, when looking at the language of a deed, that "a scrivener's device of describing lots by using an outside perimeter does not destroy the separate character of the lots that existed at the time of the conveyance." *Bailey v. City of S. Portland*, 1998 ME 54, ¶8, 707 A.2d 391, 393. Rather, the Court stated that the answer as to whether two or more parcels merged must come from "the history of the parcels and the zoning ordinance." *Logan v. City of Biddeford*, 2001 ME 84, ¶10, 772 A.2d 1183, 1186.

In *Logan*, a property owner who owned four nonconforming lots applied for a permit to build a home on two of the lots. 2001 ME 84, ¶ 4, 772 A.2d at 1184-1185. Based on its finding that the four lots had merged into one, the planning board denied Logan's application. *Id.* ¶ 5, 772 A.2d at 1185. Logan appealed to the Superior Court, where it was decided that Logan's deed "merged the formally separate lots." *Id.* ¶ 6, 772 A.2d at 1185. To reach this conclusion, the Superior Court relied on the deed's description of the four lots as being "[a] certain lot or parcel of land," and the inclusion of a perimeter description of the property. *Id.*,

¶ 3, 772 A.2d at 1184. On appeal, the Law Court held that "[t]he question of whether Logan can build another house on his property cannot be answered by looking only at his deed. The answer must come from the history of the parcels and the zoning ordinances" *Id.*, ¶ 10, 772 A.2d at 1186. Therefore, the Court remanded the case so that the planning board could put into the record factual findings necessary to determine whether or not the parcels lost their separate character. *Id.*

In the present matter, the Leightons argue that the language in their deed is functionally equivalent to the perimeter description language in the deed at issue in *Logan*, and that the history of the lot reflects that the "evolution of the separate lot descriptions in the chain of deeds conveying them had nothing to do with any express or intended merger" of the land.

The Leightons point to the fact that in 1922, when George T. Edwards conveyed Lots 56, 58, 60, 62, and 64 to Wallace L. Merrill, the deed referred to the properties as "five certain lots or parcels of land situated at Underwood Extension." It is their contention that, as the deed between Mr. Edwards and Mr. Merrill unambiguously refers to "five certain lots," that the reference to the lot as "being Lots number fifty-six (56), fifty-eight (58), sixty (60), sixty-two (62) and sixty-four (64)" cannot be read as anything more than a perimeter description. They maintain that, to read this language as merging the lots would create a conflict with the unambiguous language earlier in the deed referring to "five certain lots or parcels."

Therefore, the Leightons argue that, just as the Edwards-Merrill deed states "lot . . . being Lots number fifty-six (56), fifty-eight (58), sixty (60), sixty-two (62) and sixty-four (64)," that the portion of their deed reading "a certain lot or parcel

7

of land . . . being Lots 58, 60, 62, and 64," should equally be read as merely a device to describe the perimeter of the Property, and not as a merger of their four separate lots.

The facts of this case are different than *Logan*. In *Logan*, the Court held that a perimeter description alone cannot be used to merge two or more lots. However, here we have additional facts to take into account. While the Edwards-Merrill deed may have referred to the separate lots merely for a perimeter description of the Property, the same cannot be said of the deed that conveyed that land to the Leightons' predecessors in title, the Dunifers. Whereas in the Edwards-Merrill deed, the instrument began with the phrase "five certain lots or parcels of land," the Dunifers' and the Leightons' deeds contain no such language, but rather, contain the phrase "a certain lot or parcel of land." Matching this fact with Ordinance Section 2.94, which defines a lot as "an area of land in one ownership, or one leasehold, with ascertainable boundaries established by deed or instrument of land," it is evident that, as the Dunifers' and Leightons' deeds conveyed "a lot," and that lot had an ascertainable boundary described in the deed as Lots 58, 60, 62, and 64, that the lots merged to create what is now the Property. As such, they cannot now be split under Ordinance Section 6.3.

The present matter can further be distinguished from *Logan*. Whereas there, the City of Biddeford taxed each of Logan's properties separately, here, the Town not only taxed the Leightons' property under one bill, but also, every edition of the tax map published since 1964 has shown the Leightons' property as being one lot.

The evolution of language between the Edwards-Merrill deed to the Dunifer and Leighton deeds, the unitary tax bill and map since 1964, and the Ordinances

8

definition of "lot," supports the Board's conclusion that the four lots merged into what is now the Leightons' property.

**Therefore, the entry is:**

> This decision of the Falmouth Zoning Board of Appeals is AFFIRMED.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: September 12, 2008

Roland A. Cole
Justice, Superior Court

9

Date Filed  11-21-07        CUMBERLAND          Docket No.  AP-07-56
                             County

Action  80B COMPLAINT


JEFRREY H LEIGHTON                    THE TOWN OF FALMOUTH MAINE
LYNNE F LEIGHTON                      THE TOWN OF FALMOUTH BOARD OF ZONING APPEAL:
                                      ALBERT W FARRIS JR


                                vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOSEPH R MAZZIOTTI ESQ<br>PO BOX 1319<br>PORTLAND ME 04104<br>(207)775-3148 | WILLIAM PLOUFFE ESQ(ALL)<br>PO BOX 9781<br>PORTLAND ME 04104-5081 |

Date of
Entry